Shavaughn WILSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0012–CR–519.

Court of Appeals of Indiana.

Aug. 14, 2001.

Michael R. Fisher, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge

Shavaughn Wilson was convicted following a jury trial of: (1) dealing in cocaine, a Class A felony; (2) possession of cocaine, a Class C felony; and (3) and possession of marijuana, a Class A misdemeanor. The

trial court later found Wilson to be a habitual offender. Wilson now appeals his convictions. We affirm.

### Issues

Wilson raises the following restated issues for our review:

1. Whether the trial court properly admitted the evidence seized from the search of Wilson's person; and

2. Whether there was sufficient evidence to support Wilson's conviction for dealing in cocaine, a Class A felony.

### Facts and Procedural History

The facts reveal that on November 29, 1999, Officers Michael Mitchell and Carol Johnson heard a loud stereo when they were on bike patrol in an Indianapolis residential area. Shortly thereafter, the police officers discovered that the noise was emanating from a vehicle which was traveling down an alley. Consequently, the police officers stopped the vehicle and informed the driver, later determined to be Wilson, that he had been stopped because the volume of his stereo violated the municipal noise ordinance.

When he was asked for his driver's license, Wilson informed the two police officers that he did not have one. Officer Mitchell then asked Wilson for his name and date of his birth. Wilson responded that his name was "Shawn Wilson" and gave the month and day of his birth, but not the year. After four requests, Wilson ultimately gave Officer Mitchell his birth year. Thereafter, Officer Johnson ran a driver's license check and Officer Mitchell issued a citation to Wilson for the municipal noise ordinance violation.

During the stop, Officer Mitchell observed that Wilson appeared nervous and was trembling and sweating profusely.

Based upon concerns for officer safety, Officer Mitchell asked Wilson to step from the vehicle whereupon he performed a pat-down search for weapons. No evidence was discovered during the pat-down search.

Officer Johnson's inquiry revealed that Wilson's driver's license was suspended. Consequently, Officer Mitchell placed Wilson under arrest for driving while his license was suspended. A subsequent search of Wilson's person revealed: (1) several large chunks of cocaine in a plastic baggie and eleven individual "bindles"[1] of cocaine, totaling 25 grams; (2) Philly blunt cigar box which contained two cigars and one "bindle" of marijuana; (3) box of plastic baggies; (4) a razor blade; (5) $1280.00 in cash; and (6) two pagers.

Consequently, the State charged Wilson with: (1) dealing in cocaine, a Class A felony; (2) possession of cocaine, a Class C felony; and (3) possession of marijuana, a Class A misdemeanor. On November 29, 1997, Wilson filed with the trial court a motion to suppress the evidence seized from the search of his person. Following a pre-trial evidentiary hearing, the trial court denied Wilson's motion. At trial, Wilson objected to the introduction of the evidence recovered from the search of his person, an objection which was overruled by the trial court. A jury found Wilson guilty of the drug offenses and the trial court adjudicated him a habitual offender. Subsequently, the trial court sentenced Wilson to fifty years at the Indiana Department of Correction. This appeal ensued.

### Discussion and Decision

### I. Admission of Evidence

Wilson first contends that the trial court erred in admitting the evidence seized

---

1. A "bindle" is a street term for a corner of a baggie that has been tied off with a small piece of cocaine inside. R. 210.

from the search of his person. We disagree.

## A. Standard of Review

■ The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct.App.1996). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992).

## B. Warrantless Search

■ We note initially that Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable searches and seizures and, as a general rule, require "a judicially issued search warrant [as] a condition precedent to a lawful search." *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind.Ct.App.1996), *trans. denied.* Thus, searches conducted "outside the judicial process" are per se unreasonable under the Fourth Amendment, subject to a few well delineated exceptions. *Thompson v. Louisiana*, 469 U.S. 17, 19–21, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Both Article I, section 11 of the Indiana Constitution and the Fourth Amendment to the United States Constitution protect private and possessory interests by prohibiting unreasonable searches and seizures. *Santana v. State*, 679 N.E.2d 1355, 1358 (Ind.Ct.App.1997). The Fourth Amendment to the United States Constitution provides that:

The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

■ The Fourth Amendment protections against unreasonable search and seizure have been extended to the states through the Fourteenth Amendment. *Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The fundamental purpose of the Fourth Amendment of the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Berry*, 704 N.E.2d at 465. The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *State v. Farber*, 677 N.E.2d 1111, 1116 (Ind.Ct.App.1997), *trans. denied.*

### 1. The Initial Stop

■ Our first inquiry is to determine whether the initial stop of Wilson's vehicle was proper. Here, the police based the stop of Wilson's vehicle on the violation of the municipal noise ordinance. The ordinance provides in pertinent part that:

(a) Except as otherwise provided in this section, it shall be unlawful for any person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise, or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health and peace or safety of others within the city. Accordingly, the following acts, among others, are declared to be loud,

disturbing and unnecessary noises and in violation of this section, but such enumeration shall not be deemed to be exclusive:

* * *

(2) Radios and phonographs. Playing, using or operating, or permitting to be played, used or operated, any radio or television receiving set, musical instrument, phonograph, calliope or other machine or device for producing or reproducing sound in such a manner as to disturb the peace, quiet and comfort of the neighboring inhabitants, or at any time with louder volume than is necessary for convenient hearing for the person or persons who are in the room, vehicle, or chamber in which such machine or device is operated, and who are voluntary listeners thereto, except when a permit therefor for some special occasion is granted. The operation of any such set, instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in such a manner as to be plainly audible at a distance of fifty (50) feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this subsection.

Indianapolis: Revised Code of the Consolidated City and County § 391–302(a)(2).[2] Wilson argues that there was inadequate evidence to show the existence of a violation of the municipal noise ordinance. Wilson further argues that the violation of non-traffic ordinances should not provide a basis for investigatory stops.[3]

Officer Mitchell testified that he was on bike patrol with his partner in a residential neighborhood in Indianapolis when he heard "an extremely loud stereo" emanating from a vehicle traveling south on a parallel street. R. 192. Officer Mitchell testified that although he could not initially see the vehicle, he was able to track the car based upon the volume of the stereo. R. 192–93. Officer Mitchell testified that he and his partner caught up to the vehicle and stopped it for the municipal noise ordinance violation. R. 194. Officer Johnson confirmed Officer Mitchell's trial testimony that the volume of Wilson's car stereo was extremely loud and they stopped the vehicle in order to issue Wilson a citation. R. 232. The record indicates that the two police officers heard the noise from Wilson's car stereo a distance of 200 to 300 feet from the vehicle. Sup.R. 6. Therefore, sufficient evidence existed to support Officers Mitchell and Johnson's determination that Wilson had violated the municipal noise ordinance.

We also believe that the violation of the noise ordinance provides a basis for the police to conduct a stop of a vehicle. Indiana Code section 34–28–5–3 provides that:

Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:

(1) inform the person of the allegation;

(2) obtain the person's:

(A) name, address, and date of birth; or

(B) driver's license, if in the person's possession; and

---

**2.** We note that a first offense in a calendar year of this ordinance results in a civil penalty of $50.00. Indianapolis: Revised Code of the Consolidated City and County § 103–52.

**3.** We note that Wilson does not challenge the ordinance on its face, rather how it has been applied. Wilson argues "Although the overbreadth of this ordinance is not an issue here, its use as a pretext for automobile stops is inappropriate." Brief of Appellant at 12.

(3) allow the person to execute a notice to appear.

We have previously stated that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation. *Peete v. State,* 678 N.E.2d 415, 419 (Ind.Ct.App. 1997). The initial stop of Wilson's vehicle was due to volume of the car stereo that was in violation of the municipal noise ordinance. After stopping the vehicle, the police officers requested information from Wilson in order to issue the citation.

 Even if the stop was pretextual, this does not render the subsequent search unconstitutional if the stop was lawful. *State v. Dodson,* 733 N.E.2d 968, 972 (Ind.Ct.App.2000). A police officer's subjective motives are irrelevant in Fourth Amendment analysis, and a stop will be valid provided there is an objectively justifiable reason for it. *State v. Hollins,* 672 N.E.2d 427, 431 (Ind.Ct.App.1996), *trans. denied.* Therefore, the initial stop of Wilson's vehicle was valid.

2. Search Incident to Arrest Exception

 One recognized exception to the warrant requirement is a search conducted incident to a lawful arrest. *Caudill v. State,* 613 N.E.2d 433, 439 (Ind.Ct.App. 1993). "Incident to lawful arrest, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control." *Culpepper,* 662 N.E.2d at 675 (citing *Chimel v. California,* 395 U.S. 752, 766, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Evidence resulting from a search incident to a lawful arrest is admissible at trial. *Hammond v. State,* 594 N.E.2d 509, 514 (Ind. Ct.App.1992), *trans. denied.* Two historical rationales for the search incident to arrest exception to the warrant requirement are: (1) the need to disarm the suspect in order to take him into custody; and (2) the need to preserve evidence for later

use at trial. *United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Furthermore, we do not require that a search incident to an arrest be made immediately following the arrest of the person involved. *Caudill,* 613 N.E.2d at 439.

 We first must determine whether Wilson's arrest itself was lawful. *Culpepper,* 662 N.E.2d at 675. Indiana Code section 35–33–1–5 defines an arrest as "taking of a person into custody, that he may be held to answer for a crime." An arrest has occurred when a police officer "interrupts the freedom of the accused an[d] restricts his liberty of movement." *Sears v. State,* 668 N.E.2d 662, 667 (Ind. 1996). In addition, even when a police officer does not tell a defendant that he is under arrest prior to a search, that fact does not invalidate a search incident to an arrest as long as there is probable cause to make an arrest. *Jackson v. State,* 588 N.E.2d 588, 590 (Ind.Ct.App.1992). Furthermore, the subjective belief of the police officer that he may not have probable cause to arrest a defendant when he handcuffs the defendant has no legal effect. *Roberts v. State,* 599 N.E.2d 595, 598 (Ind. 1992).

 Probable cause for arrest exists where at the time of the arrest the officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Id.* An unlawful arrest cannot be the foundation of a lawful search. *Regan v. State,* 590 N.E.2d 640, 644 (Ind.Ct.App.1992). Moreover, evidence which is the product of an unlawful detention or an illegal arrest is inadmissible. *Id.* Evidence obtained as a direct result of a search conducted after an illegal arrest is excluded under the fruit of the poisonous tree doctrine. *Jackson v.*

*State,* 669 N.E.2d 744, 749 (Ind.Ct.App. 1996).

Here, Wilson informed the police officers that he did not have a driver's license. R. 195. Officer Mitchell testified at trial that a subsequent driver's license check revealed that Wilson's driver's license was suspended. R. 199. Furthermore, Officer Mitchell testified that he placed Wilson in handcuffs and informed him he was under arrest for driving while his license was suspended in violation of Indiana Code section 9–30–10–16. *Id.* It is clear that Officer Mitchell had probable cause to arrest Wilson and thus, Officer Mitchell lawfully arrested Wilson.

▇▇▇ Because we have determined that Wilson's arrest was lawful, we must now determine whether the search of Wilson's person exceeded the scope of a search incident to an arrest. The scope of a search incident to a valid arrest is generally limited to a search of the person of the arrestee and the area within his immediate control to which he could reach for weapons or to destroy evidence. *Gibson v. State,* 733 N.E.2d 945, 954 (Ind.Ct.App. 2000) (citing *Chimel v. California,* 395 U.S. 752, 776, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The illicit drugs and other evidence were recovered from a search of Wilson's person after he was placed under arrest for driving while his license was suspended. Therefore, the scope of the search was not impermissible.

Accordingly, we hold that the trial court properly admitted the evidence seized from a search of Wilson's person.

## II. Sufficiency of the Evidence

▇▇▇ Wilson also contends that there was insufficient evidence to support his conviction for dealing in cocaine, a Class A felony, because the State did not prove that he possessed the cocaine with intent to deliver. We disagree.

### A. Standard of Review

Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or consider the credibility of witnesses. *Weaver v. State,* 702 N.E.2d 750, 752–53 (Ind.Ct.App.1998). Only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom will be considered. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.*

### B. Dealing in Cocaine

▇▇▇ Because intent is a mental state, a trier of fact must generally resort to the reasonable inferences arising from the surrounding circumstances to determine whether the requisite intent exists. *McGuire v. State,* 613 N.E.2d 861, 864 (Ind.Ct.App.1993), *trans. denied.* Circumstantial evidence showing intent to deliver may support a conviction for dealing in cocaine. *Love v. State,* 741 N.E.2d 789, 792 (Ind.Ct.App.2001). Possession of a large quantity of drugs, money, plastic bags, and other paraphernalia is circumstantial evidence of intent to deliver. *McGuire,* 613 N.E.2d at 864. Furthermore, the more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally. *Love,* 741 N.E.2d at 792.

We believe there was sufficient evidence to support Wilson's conviction dealing in cocaine, a Class A felony. Wilson possessed a large quantity of cocaine when he was arrested, 25 grams. Sergeant Steve Swarm testified at trial that a typical user only ingests one to two grams of cocaine a day, and will not possess a large quantity of cocaine because the user will typically smoke the drug as soon as it is bought. R. 264. Robert McCurdy, a crime lab chem-

ist, testified that the large chunks of cocaine in the plastic baggie recovered from Wilson contained 23.7550 grams, and the substance in the eleven individual "bindles" was 1.9002 grams of cocaine. R. 244. Further, Officer Mitchell and Sergeant Swarm testified that packaging cocaine in "bindles" is a common method of distributing cocaine. R. 210–11, 261. In addition, razor blades and plastic baggies were recovered from a search of Wilson's person, two items which Officer Mitchell and Sergeant Swarm testified are utilized for the distribution of cocaine. R. 211, 261–62. *See Lampkins v. State,* 682 N.E.2d 1268, 1276 (Ind.1997), *modified on rehearing on other grounds,* 685 N.E.2d 698 (Ind.1997) (jury could infer intent to deal from evidence that "defendant was in constructive possession of an amount of cocaine greater than that ordinarily carried by an individual user and that the [4.28 grams of] cocaine was packaged for sale" in a medicine bottle and a plastic bag "and sorted according to price and size").

Also, the search of Wilson's person revealed $1,280.00 in cash and two pagers which indicate that Wilson was dealing in cocaine. *See* R. 266. No paraphernalia for ingesting cocaine was recovered by the police when Wilson was arrested. R. 222. *See O'Neal v. State,* 716 N.E.2d 82, 90 (Ind.Ct.App.1999) (defendant's lack of paraphernalia is a factor in determining intent to deal cocaine). Therefore, we refuse to reverse Wilson's conviction for dealing in cocaine, a Class A felony on the basis of insufficient evidence.

### Conclusion

Based on the foregoing, we hold that the trial court properly admitted the evidence seized from a search of Wilson's person. In addition, we hold that there was sufficient evidence to support Wilson's conviction for dealing in cocaine, a Class A felony.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.