Antwand JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A05–0106–CR–269.

Court of Appeals of Indiana.

April 18, 2002.

Transfer denied May 23, 2002.

---

Kathleen M. Sweeney, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Antwand Johnson was convicted of Unlawful Possession of a

Firearm by a Serious Violent Felon, a Class B felony.[1] He presents one issue for our review: whether the handgun seized from his vehicle was the product of an unconstitutional search and seizure.

On March 19, 2000, at approximately 2:00 a.m., Indianapolis Police Department Officer Charles Pearsey responded to a report of shots fired at a White Castle restaurant. Officer Pearsey spoke to several individuals at the scene, some of whom provided their names but wished to remain unidentified in any reports so they would not have to serve as witnesses. The officer was informed that three vehicles had been involved in the shooting. One of the vehicles was a white Cadillac which was determined to belong to Johnson. The witnesses informed Officer Pearsey that after the shots were fired, the shooter, a black male with braided hair, placed a gun under the hood of the Cadillac. The witnesses also informed Officer Pearsey that the individual then got into the driver's side of the vehicle and fled westbound on 38th Street, with several passengers in the vehicle. Officer Pearsey broadcast this information over the radio.

Officer Fred Carpenter located the Cadillac being driven by Johnson. He, along with several other officers, stopped the vehicle, and ordered Johnson and the other individuals to get out of the car one at a time. Each individual was patted down and handcuffed. Indianapolis Police Sergeant Randall Staab informed Johnson of the reason for the stop and read him his Miranda rights. Sergeant Staab asked Johnson if he would consent to a search of his car, and Johnson told him that he could search it. Sergeant Staab found a .45 caliber Smith and Wesson handgun hidden next to the windshield washer fluid reservoir in the engine compartment of the Cadillac.

Johnson was charged with four counts arising out of the shooting at the White Castle restaurant and the subsequent search of his vehicle. However, three of the counts were dismissed the day of the trial. Before the trial, the trial court held a hearing on a motion to suppress the handgun seized following the search. The motion was denied, and the evidence was admitted at trial.

*Initial Stop and Arrest*

As this court noted in *Bovie v. State*, 760 N.E.2d 1195, 1197 (Ind.Ct.App. 2002), the three levels of police investigation are an arrest or detention based upon probable cause, an investigatory stop based upon a reasonable and articulable suspicion, and a consensual encounter. An investigatory stop is proper if the facts known to the officer at the time of the stop are such that a man of reasonable caution would believe that the action of the officer was appropriate. *Id.* at 1198. Once an officer has formed a reasonable suspicion which justifies a limited investigative stop of a vehicle, the officer may temporarily freeze the situation in order to make an investigative inquiry. *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind.Ct.App.2000).

Indiana Code § 35–33–1–1 (Burns Code Ed. Supp.2001) provides that a police officer may arrest a person when the officer has probable cause to believe that the person has committed or attempted to commit a felony. An arrest is defined as "the taking of a person into custody, that he may be held to answer for a crime." Ind.Code § 35–33–1–5 (Burns Code Ed. Repl.1998); *Gibson v. State*, 733 N.E.2d 945, 953 (Ind.Ct.App.2000). When an officer interrupts the freedom of the accused and restricts that individual's liberty of movement, an arrest has occurred.

---

1. Ind.Code § 35–47–4–5 (Burns Code Ed. Supp.2001).

*Gibson,* 733 N.E.2d at 953. Probable cause for an arrest exists when the facts and circumstances known to the officer at the time of the arrest warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Id.*

Johnson first contends that the stop of his vehicle was unconstitutional because the police officers did not have a reasonable and articulable suspicion to make a stop based upon the tips from anonymous informants. However, in light of the evidence presented at trial, it appears that the stop was made by the officers as merely the means to effectuate the arrest of Johnson. As Officer Staab testified, the first thing he did after the individuals were removed from the car was to explain to Johnson the reason for the stop and to advise him of his Miranda rights. By placing Johnson in custody and advising him of his Miranda rights, Officer Staab was not detaining Johnson for the purpose of making an investigative inquiry; rather, Johnson was taken into custody so that he "may be held to answer for a crime." I.C. § 35–33–1–5. Therefore, the events that took place are more appropriately addressed as an arrest, requiring probable cause, rather than as an investigatory stop, requiring only reasonable and articulable suspicion.

■ Johnson asserts that the officers could not rely upon the information provided by the witnesses in the White Castle parking lot because they were anonymous informants and that there was no test of the information to determine whether it was reliable. In so arguing, he relies upon several cases which require that before an officer may use information relayed from an anonymous informant to form a reasonable and articulable suspicion to make an investigatory stop, there must be some independent indicia of reliability or officer

observed confirmation of the informant's prediction of the defendant's future behavior. *See Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Washington v. State,* 740 N.E.2d 1241 (Ind.Ct.App. 2000), *trans. denied.* However, there is also a second class of informants upon which the police may rely. Cooperative citizens include victims of crime and eyewitnesses. *Pawloski v. State,* 269 Ind. 350, 354, 380 N.E.2d 1230, 1232–33 (1978). Informants of this type are considered to be reliable for the purpose of determining probable cause unless incriminating circumstances exist which cast suspicion upon the informants' reliability. *Id; State v. Johnson,* 669 N.E.2d 411, 413 n. 2 (Ind.Ct. App.1996), *trans. denied.*

■ While Johnson is correct that the officers would not have been able to rely upon the information had the informants been anonymous, the informants here are not properly designated as anonymous informants. Rather, they should be treated as cooperative citizens. Upon being asked at trial about whether most of the eyewitnesses did not give him their names, Officer Pearsey responded that they did not. He also stated that he was not aware of whether any of the informants knew Johnson, but that no one gave him Johnson's name if they knew it. We draw upon Officer Pearsey's testimony at the suppression hearing for clarification upon what he knew of the informants. At the suppression hearing, Officer Pearsey testified that some of the individuals identified themselves to him, but that he did not give their names to the Prosecutor's Office because they did not want to serve as witnesses. From this, we see that Officer Pearsey likely had enough information to be able to contact these individuals in the future had he needed to, and because some

gave him their names, it does not appear that they were hiding their identities in order to protect themselves from the repercussions of fabricating a story or reporting false information. Also, nothing in the record indicates the presence of incriminating circumstances which should have made Officer Pearsey suspicious of these informants. They appear to be no more and no less than individuals who were witnesses to a shooting and who provided reliable information as cooperative citizens upon which the police could rely in order to determine whether probable cause existed for the arrest of Johnson. *See State v. Straub,* 749 N.E.2d 593 (Ind. Ct.App.2001); *Bogetti,* 723 N.E.2d 876.

In order for the police to determine that probable cause existed, the facts and circumstances related to Officer Pearsey from the cooperative citizens must have been sufficient so that an individual of reasonable caution would believe that the driver of the Cadillac, Johnson, was involved in the shooting. *See Gibson,* 733 N.E.2d at 953. The cooperative citizens stated that an individual matching the appearance of Johnson shot the handgun in the parking lot, placed the gun under the hood of a white Cadillac, and then proceeded to drive the car westbound on 38th Street. Based upon the information relayed to Officer Pearsey, the officers who made the stop had probable cause for the arrest of Johnson. *See Capps v. State,* 248 Ind. 472, 229 N.E.2d 794 (1967) (holding that officers had probable cause to make an arrest based upon information that a robber was driving a certain make, model and color of automobile, was wearing a red and white checked shirt, had long dark hair, and was seen driving away from the scene of the robbery at 2:00 a.m.).

### Search and Seizure

■ The Fourth Amendment to the United States Constitution and Article 1,

Section 11 of the Indiana Constitution protect against unreasonable searches and seizures. *Wilson v. State,* 754 N.E.2d 950, 954 (Ind.Ct.App.2001). According to Article 1, Section 11 of the Indiana Constitution, we must determine whether the reliance by the police upon their own information in deciding to conduct a warrantless search of an automobile was reasonable under the totality of the circumstances. *Brown v. State,* 653 N.E.2d 77, 79–80 (Ind.1995). The ultimate determination of whether probable cause for a warrantless search exists is reviewed de novo. *Sebastian v. State,* 726 N.E.2d 827, 830 (Ind.Ct.App.2000), *trans. denied.*

Johnson asserts that the officers conducted an unconstitutional search of his automobile and illegally seized the handgun from underneath the hood. He contends that the officers violated his rights by failing to advise him of his rights in consenting to a search which is required according to our Supreme Court's decision in *Pirtle v. State,* 263 Ind. 16, 323 N.E.2d 634 (1975). Because he was not advised of his rights through the *Pirtle* warnings, he states that his consent to the search was invalid. The State concedes that the *Pirtle* warnings were not given, but argues that consent was not necessary as the officers had probable cause to conduct the search. As the State concedes the issue based upon the failure of the officers to give *Pirtle* warnings, we will address only the State's argument regarding probable cause for the search.

■ In this case, Officers from the Indianapolis Police Department responded to a report of shots fired at a local White Castle. Upon arriving, one officer was informed by witnesses that three vehicles were involved, was given a description of one of the shooters and the vehicle he was driving, which contained multiple passen-

gers, and was told that a handgun had been stashed under the hood of the car. Other officers, reacting to the report which was dispatched, stopped the automobile and apprehended the driver, who fit the description of the shooter. After removing the occupants from the automobile, the officers opened the hood to recover the gun that was located in view on top of the air filter and windshield washer reservoir.

Given these facts, we cannot say that it was unreasonable for the officers to search under the hood to locate and retrieve the gun. There was probable cause for the officers to believe that the instrumentality of a crime, the handgun, was located underneath the hood. Were the officers to have let the other individuals in the vehicle leave without searching or impounding the car, the gun could have been removed and disposed of, or worse, used to harm other persons. Our police act not only to enforce the law, but also to protect the citizenry from harm that may befall it. By no means could it be considered safe for an automobile to be driven or towed with a handgun stashed underneath the hood.[2] There was a plausible risk that the handgun could fall from under the hood to the ground, and thereby come into the possession of a child or a criminal. Because the threat of harm and loss of evidence was significant, the search and seizure was reasonable under the Indiana Constitution.

 The Fourth Amendment to the United States Constitution provides similar protection against unreasonable searches and seizures. As a general rule, a search warrant is required in order to conduct a lawful search. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Wilson*, 754 N.E.2d at 954. Searches conducted without a warrant are per se unreasonable subject to

a few well delineated exceptions. *Wilson*, 754 N.E.2d at 954. The State bears the burden of establishing that a warrantless search falls within an exception to the warrant requirement. *Id.* One exception to the warrant requirement is the automobile exception. *Carney*, 471 U.S. at 390, 105 S.Ct. 2066. The scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *U.S. v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The probable cause determination must be based upon objective facts which would justify the issuance of a warrant by a magistrate. *Id.* at 808, 102 S.Ct. 2157. A search is not unreasonable under the Fourth Amendment if the facts would have justified the issuance of a warrant, even though a warrant had not actually been obtained. *Id.* at 809, 102 S.Ct. 2157.

 The Fourth Amendment does not require a separate exigency requirement for the automobile exception. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam). " 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.' " *Id.* at 467, 119 S.Ct. 2013 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam)). "Ready mobility" was recognized by the earliest United States Supreme Court cases as providing the basis for a warrantless search of an automobile. *Carney*, 471 U.S. at 390–91, 105 S.Ct. 2066; *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As Justice Marshall wrote in his dissent in *Ross*, 456 U.S. at 830, 102 S.Ct.

---

**2.** The photographic exhibits depicting the gun and its location in the engine compartment do

not conclusively demonstrate that the handgun was securely held in place by a brace.

2157, the mobility rationale is a misnomer because police can ordinarily remove the occupants of the automobile and secure the vehicle on the spot. Further, the Supreme Court has also recognized a second justification for the warrantless searches of automobiles, the diminished expectation of privacy in an automobile. *Labron,* 518 U.S. at 940, 116 S.Ct. 2485; *Carney,* 471 U.S. at 391, 105 S.Ct. 2066; *see, e.g., Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (allowing a warrantless search when the mobility of the automobile was clearly not present because the automobile had been towed to a garage following an accident). The justification for a warrantless search does not vanish once a car has been immobilized, nor does it depend upon the likelihood that the automobile would have been driven away in that particular case, or that the contents of the vehicle would have been tampered with, during the period required for the police to obtain a warrant. *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam). The warrantless search of an automobile is allowed because a warrant would not provide significant protection of a defendant's Fourth Amendment interests. *Ross,* 456 U.S. at 831, 102 S.Ct. 2157 (Marshall, J., dissenting).

In this case, a review of the facts does not reveal whether any of the individuals who were present in the car would have been or were allowed to drive the Cadillac after Johnson was arrested. However, as noted above, this determination is not necessary under Fourth Amendment analysis. Because the Cadillac was capable of being driven, the ready mobility requirement of the Fourth Amendment was met. Also, whether the Cadillac would have been driven away from the scene or towed to an impoundment lot, Johnson had a diminished expectation of privacy in the Cadillac. Therefore, the justification for a warrant-

less search had been triggered. Next, the State must show that the officers had probable cause in searching the automobile. As we discussed in our analysis under the Indiana Constitution, the officers had probable cause based upon facts which led them to believe that a handgun, which had been used in a shooting, had been stashed under the hood of the Cadillac. Therefore, the officers' search of Johnson's vehicle after the stop and arrest was reasonable because it was based upon probable cause which would have justified the issuance of a warrant. *See Cady,* 413 U.S. at 446, 93 S.Ct. 2523 (holding that it was not unreasonable for officers without a warrant to search for a handgun in the trunk of a vehicle, which had been ordered by the police to be towed to a garage following an accident, because of the concern that vandals may have broken into it and taken the gun). The trial court properly admitted the handgun seized in the search of the automobile into evidence.

The judgment is affirmed.

KIRSCH, J., and ROBB, J., concur.