## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 17 2015, 10:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vinson Tate,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 17, 2015<br><br>Court of Appeals Case No.<br>02A05-1308-CR-447<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy W. Davis, Judge<br><br>Case No. 02D05-1206-FA-28 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Vinson Tate represented himself at trial and was convicted of dealing in cocaine as a Class A felony and possession of marijuana as a Class A misdemeanor. He

now appeals raising numerous issues. We hold that Tate knowingly, voluntarily, and intelligently waived his right to counsel. We also hold that the trial court did not err in denying Tate's motion to continue trial. In addition, although Tate waived his argument that the trial court erred in admitting the cocaine into evidence, the trial court nevertheless did not err in admitting it. The trial court also did not err in admitting Tate's prior conviction for dealing in cocaine. Further, any error in the exclusion of Tate's wife's testimony was harmless. Finally, Tate's dealing conviction is supported by sufficient evidence, and his thirty-five-year executed sentence is not inappropriate.

## Facts and Procedural History

[2] On June 21, 2012, Fort Wayne Police Department Narcotics Detectives were dispatched to an apartment complex following a call regarding the sale of drugs. Detective Kirschner arrived at the scene and observed a parked, running, and occupied black Suburban in the parking lot. She also saw several individuals approach the vehicle, enter it, exit it, and leave immediately, which is consistent with the sale of drugs. When the driver of the Suburban left the parking lot, Detective Kirschner followed him in an unmarked car. Shortly thereafter, Detective Kirschner told Detective Marc Deshaies, who was driving a car with police emergency lights, that she saw the Suburban's driver cross the center line several times. Detective Deshaies caught up with the Suburban and stopped it.

[3] When Detective Deshaies approached the Suburban, the driver, Tate, was very nervous. The detective looked inside the Suburban with a flashlight and

noticed marijuana residue on top of the console. He asked Tate to exit and step to the rear. As the detective performed a pat-down search of Tate, Tate's legs and buttocks muscles tightened. A search of Tate's Suburban revealed additional marijuana residue. The detective also found three large bundles of cash totaling $3000 in the Suburban's console.

[4] Detective Deshaies transported Tate to the Allen County Jail, where officers conducted a strip search of Tate and found a folded wad of toilet paper between Tate's buttocks. When the officers unfolded the toilet paper, they discovered a plastic baggie that held fifteen small knotted baggies of cocaine. Six of those baggies contained crack cocaine and nine of the baggies contained powder cocaine. The total weight of the cocaine was 5.74 grams, and it had a street value of $850.

[5] The State charged Tate with dealing in cocaine as a Class A felony and possession of marijuana as a Class A misdemeanor. At the initial hearing on June 28, 2012, Tate requested a public defender. However, at the omnibus hearing on August 17, Tate told the trial court that he wanted to represent himself. Five days later, on August 22, the trial court scheduled trial for October 16, and Tate told the trial court that he now wanted to hire private counsel. At a September 19 pre-trial hearing, Tate had private counsel, who requested a continuance of the hearing to obtain information about the case from the public defender. Private counsel attended a rescheduled hearing five days later.

[6] At an October 22, 2012 hearing, private counsel told the trial court that Tate had asked him to withdraw from the case, and Tate told the trial court that he wanted to represent himself. The trial court told Tate that trial was scheduled for January 15, 2013, and that it would not grant any motions to continue trial. A week later, Tate advised the trial court that he was going to keep private counsel. However, at a status hearing on December 10, 2012, private counsel tendered a motion to withdraw. Tate had again decided that he wanted to represent himself; however, the trial court convinced him to talk to a public defender. Four days later, the public defender asked for a continuance, which the trial court granted, and trial was re-scheduled for April 10, 2013.

[7] On December 20, 2012, Tate filed a motion to suppress the cocaine, which the trial court denied after a hearing. At a March 11, 2013 pre-trial hearing, Tate advised the trial court that he had asked his public defender to withdraw from the case because he wanted to represent himself. The trial court informed Tate that the issue would be discussed at a March 15 hearing. At that hearing, the public defender told the trial court that Tate had asked three or four times to represent himself, and he recommended that "[a]t this point . . . that's the appropriate way to go." March 15 Hr. Tr., p. 4.

[8] The trial court released the public defender's office from representing Tate and allowed Tate to proceed pro se. However, the court advised Tate that an attorney has skills and expertise to prepare and present a defense in a criminal case and that if Tate decided not to have an attorney, he would not receive any special treatment. Specifically, the trial court advised Tate that he would be

required to follow the same rules and legal procedures that an attorney follows, and he would be expected to understand the case law and statutes that applied to his case. The trial court further explained that the deputy prosecutors on the case were skilled and experienced lawyers. Tate responded that he would represent himself better than his public defender had. The trial court further explained that it would not grant Tate any further continuances in the case and that Tate would be held to the same standard as a lawyer. Last, the trial court told Tate that if he represented himself and was convicted, he would not be able to argue ineffective assistance of counsel on appeal. When asked if he could "represent [him]self in that regard," Tate responded that he could. *Id.* at 11. However, at the close of the hearing, Tate asked if he could hire private counsel. The trial court responded that he could but that he had to be ready for trial on April 10, 2013.

[9] Before trial, Tate, who had not hired an attorney and was representing himself, filed a motion to continue. At a hearing on the motion the day before trial, the trial court denied Tate's motion to continue "based on the history of the case." April 9 Hr. Tr., p. 19. Specifically, the trial court pointed out that it had been almost a year since the initial hearing was held, and the trial court had already twice rescheduled trial. The trial court had also previously advised Tate that it would not grant any further continuances.

[10] At trial, Detective Deshaies testified that the pre-packaged and pre-weighed individual baggies filled with cocaine, the amount of cocaine, and the value of the cocaine were all consistent with drug dealing. According to the detective, a

typical drug user does not possess 5.74 grams of cocaine worth $850. Rather, the detective explained that drug users typically "don't have quantities in excess of a couple of days' worth." Tr. p. 218. Detective Deshaies further explained that a "$20.00 rock is considered a single usage quantity that would last for four to six hours maybe. Four hours total by the time they were done being high. . . . A $20.00 rock is typically two tenths of a gram of crack cocaine. So you would see someone with maybe up to a gram. The largest we see is up to three grams for a user and typically anything beyond that is going to be consistently with the dealing quantities." *Id.* at 219. Tate, however, testified that although he had not used drugs for the past nine or ten years, the cocaine was for his own personal use and that he did not intend to sell it. Thereafter, the trial court admitted into evidence Tate's prior conviction for dealing in cocaine. Also at trial, the trial court excluded the testimony of Tate's wife who would have testified that the money found in Tate's car was going to help pay for the couple's wedding expenses.[1]

[11] The jury convicted Tate of dealing in cocaine as a Class A felony and possession of marijuana as a Class A misdemeanor. Evidence presented at the sentencing hearing revealed that Tate has three prior felony convictions, including two convictions for obstruction of justice and one conviction for dealing in cocaine as a Class A felony as well as five misdemeanor convictions.

---

[1] Although not clear from the record, it appears that Tate and his wife were not married at the time Tate committed the offenses in this case.

In addition, Tate's probation has been revoked twice. The trial court sentenced Tate to forty-five years for the Class A felony, with thirty-five years executed and ten years suspended, and one year for the Class A misdemeanor, with the sentences to be served concurrently, for a total executed sentence of thirty-five years.

Tate appeals his convictions and sentence.

# Discussion and Decision

At the outset we note that although Tate represented himself at trial, he is held to the same standard as trained counsel and is required to follow the same procedural rules at trial. *See Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. We now turn to the issues in this case.

# I. Waiver of Right to Counsel

Tate first contends that the trial court violated his constitutional right to counsel under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution because he did not knowingly, voluntarily, or intelligently waive his right to counsel. The Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution both guarantee a criminal defendant the right to appointed counsel. *Faretta v. California*, 422 U.S. 806, 835 (1975); *Callahan v. State*, 719 N.E.2d 430, 439 (Ind. Ct. App. 1999). Accordingly, when a criminal defendant waives his right to counsel and elects to proceed pro se, we must decide

whether the trial court properly determined that the defendant's waiver was knowing, voluntary, and intelligent. *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). Waiver of assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Id.*

[15] For example, in *Jones*, the trial record demonstrated that the trial court questioned Jones and his counsel several times to establish whether Jones knowingly, willingly, and voluntarily exercised his right to self-representation. Specifically, the trial court explicitly informed Jones regarding the potential danger of pro se litigation. The trial court also reminded Jones that he was not trained in the law and that his attorneys were. It cautioned him that he would be held to the same standard as a lawyer and warned him that if he were convicted, he would not be able to claim ineffective assistance of counsel on appeal. The trial court asked Jones more than three times whether he wanted to represent himself, and Jones responded that he did. Jones acknowledged that he realized he would be held to the same standard as an attorney, and the trial court attempted to discourage Jones from self-representation. Last, the appointed attorneys for Jones indicated that each had discussed the matter with Jones, and both of them told the court they believed Jones understood what his decision involved. The Indiana Supreme Court concluded that the trial court's inquiry and the responses were adequate to establish that Jones knowingly, willingly and voluntarily waived his right to counsel. *Id.* at 1139.

Here, as in *Jones*, our review of the record reveals that the trial court specifically informed Tate regarding the potential danger of pro se litigation. The trial court 1) reminded Tate that he was not trained in the law and that the attorneys were; 2) cautioned him that he would be held to the same standard as a lawyer; and 3) warned that if he represented himself and was convicted, he would not be able to claim ineffective assistance of trial counsel on appeal. Tate acknowledged that he would be held to the same standard as an attorney and believed he would be able to represent himself better than his public defender had. Last, Tate's public defender told the trial court that Tate had asked to represent himself three to four times, and allowing him to do that was "the appropriate way to go." March 15 Hr. Tr., p. 4. The trial court's inquiry and the responses were adequate to establish that Tate knowingly, voluntarily, and intelligently waived his right to counsel under the United States and Indiana Constitutions. *See Jones*, 783 N.E.2d at 1139. We find no error.

## II. Denial of Motion for Continuance

Tate next argues that the trial court erred in denying his motion to continue trial. The decision to grant or deny a motion for continuance lies within the discretion of the trial court and will be reversed only for an abuse of that discretion. *Stafford v. State*, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We will not conclude that the trial court abused its discretion unless the defendant can demonstrate prejudice as a result of the trial court's denial of the motion for continuance. *Id.*

There is always a strong presumption that the trial court properly exercised its discretion. *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995). Continuances for additional time to prepare for trial are generally disfavored, and courts should grant such motions only where good cause is shown and such a continuance is in the interest of justice. *Jackson v. State*, 758 N.E.2d 1030, 1033 (Ind. Ct. App. 2001).

[18] *Risner v. State*, 604 N.E.2d 13 (Ind. Ct. App. 1992), *trans. denied,* is instructive. There, Risner argued that the trial court erred in denying his motion to continue. Our review of the record revealed that Risner testified that he was aware that the trial court was not required to grant his motion to continue even though new counsel would have less than two working days to prepare for trial. *Id.* at 14. We noted that Risner's previous request for a continuance, which was denied, coupled with his decision to discharge counsel without telling counsel until the morning before trial, revealed a desire to circumvent the judicial process and the court's earlier ruling. *Id.* at 14-15. In addition, the State informed the new counsel that it would vigorously object to a continuance, and Risner was given an opportunity to weigh the consequences of his course of action. We explained that the parties to an action may not dictate the course of the proceedings by attempting to manipulate the judicial process, and that the trial court did not abuse its discretion in denying Risner's motion to continue. *Id.* at 15.

[19] Here, our review of the evidence reveals that over a ten-month period, Tate made at least six different requests for private counsel, appointed counsel, and

self-representation. Tate also made several requests to continue hearings and trials, most of which the trial court granted. One month before trial on March 15, 2013, after granting two trial continuances, the trial court told Tate it would not grant any further motions to continue trial. Tate's request was a further attempt to circumvent the judicial process and the court's earlier rulings. The trial court did not abuse its discretion in denying Tate's third motion to continue trial.

# III. Admission and Exclusion of Evidence

[20] Tate further argues that the trial court erred in admitting and excluding evidence. Specifically, he argues that the trial court erred in admitting into evidence the cocaine as well as Tate's prior conviction for dealing in cocaine. He also argues that the trial court erred in excluding his wife's testimony. The admission or exclusion of evidence lies within the trial court's sound discretion and is afforded great deference on appeal. *White v. State*, 24 N.E.3d 535, 338 (Ind. Ct. App. 2015). We will reverse a trial court's ruling on the admissibility of evidence only for an abuse of that discretion. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

## A. Admission of Cocaine into Evidence

[21] Tate first argues that the trial court erred in admitting into evidence the cocaine found in his possession. Specifically, Tate contends that Detective Deshaies did not have a lawful basis for initiating the stop of Tate's Suburban, the detective

should have issued Tate a ticket and allowed him to go, and the detective was not credible. Tate has waived appellate review of this issue for two reasons.

[22] First, although Tate originally challenged the admission of this evidence through a motion to suppress, he appeals following a completed trial and thus challenges the admission of the evidence at trial. Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the issue on appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. Because Tate failed to object to the admission of this evidence when it was introduced at trial, he has waived appellate review of this issue. Second, in the argument section of his appellate brief, Tate has failed to cite to relevant legal authority. Therefore, pursuant to Indiana Appellate Rule 46(A)(a)(8), Tate has waived this issue on appeal. *See Hollowell v. State,* 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) (providing that failure to support each contention with citation to relevant legal authority results in waiver of that issue on appeal).

[23] Waiver notwithstanding, we find no error. The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *State v. Murray*, 837 N.E.2d 223, 225 (Ind. Ct. App. 2005), *trans. denied*. The police may stop an individual for investigatory purposes if, based on specific, articulable facts, the officer has a reasonable suspicion that criminal activity is afoot. *Id.* It is well settled that a police officer may stop a car when he observes a minor traffic violation. *Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011).

[24]     Indiana Code section 9-21-8-2(a) requires cars traveling on two-lane roads to remain on the right half of the road. *State v. Sitts*, 926 N.E.2d 1118, 1121 (Ind. Ct. App. 2010). There are listed exceptions; however, none of them apply here. Detective Kirschner, who was driving an unmarked police car, told Detective Deshaies that she saw Tate cross the center line several times. Detective Deshaies, who was driving a car with police emergency lights, stopped Tate's vehicle. Tate appears to believe that Detective Deshaies did not have a reasonable basis to stop him because Detective Deshaies did not see Tate cross the center line.

[25]     However,

> [u]nder the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. . . . A primary focus in the imputed knowledge cases is whether the law enforcement officers initiating the search or arrest, on whose instructions or information the actual searching or arresting officers relied, had information that would provide reasonable suspicion or probable cause to search or arrest the suspect.

*State v. Gray*, 997 N.E.2d 1147, 1153 (Ind. Ct. App. 2013) (quoting *United States v. Colon*, 250 F.3d 130, 135-36 (2d Cir. 2001)). In addition, in order to rely on the collective-knowledge doctrine, the knowledge sufficient for reasonable suspicion must be conveyed to the investigating officer before the stop is made. *State v. Murray*, 837 N.E.2d 223, 226 (Ind. Ct. App. 2005), *trans. denied*.

[26] Here, Detective Kirschner, who was involved with the investigation, saw Tate cross the center line of traffic. This traffic violation provided the detective with reasonable suspicion to stop Tate's car. Because she was in an unmarked police car, Detective Kirschner conveyed her observation of the violation to Detective Deshaies, who was driving a car with police emergency lights. Under the collective-knowledge doctrine, Detective Kirschner provided this information to Detective Deshaies before the stop was made, which justified his stop of Tate's Suburban. Accordingly, Detective Deshaies had reasonable suspicion to stop Tate's Suburban. We find no Fourth Amendment violation, and the trial court did not err in admitting the cocaine into evidence.

[27] Tate also argues that the admission of the challenged evidence violated his rights under Article 1, Section 11 of the Indiana Constitution, which provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable search or seizure, shall not be violated." Although almost identical to the wording in the search-and-seizure clause of the federal constitution, Indiana's search-and-seizure clause is independently interpreted and applied. *Baniaga v. State,* 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Hathaway v. State*, 906 N.E.2d 941, 945 (Ind. Ct. App. 2009), *trans. denied*.

Here, for the reasons stated in our analysis relating to the Fourth Amendment, we conclude that the admission of the cocaine was reasonable under the circumstances. Specifically, Detective Kirschner saw Tate cross the center line of traffic, which provided the detective with reasonable suspicion to stop Tate's Suburban. The detective then conveyed this information to Detective Deshaies, and, pursuant to the collective-knowledge doctrine, provided him with reasonable suspicion to stop the Suburban as well. The admission of the cocaine does not violate Article 1, Section 11 of the Indiana Constitution.[2]

## B. Admission of Tate's Prior Conviction

Tate next argues that the trial court erred in admitting his 2005 dealing-in-cocaine conviction into evidence. Admission of evidence of other acts of misconduct is governed by Indiana Evidence Rule 404(b), which provides:

> (1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion, the person acted in accordance with the character.

> (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

This rule was designed to prevent a jury from assessing a defendant's present guilt on the basis of past propensities. *Allen v. State*, 720 N.E.2d 707, 711 (Ind.

---

[2] To the extent Tate argues that the detective should have issued Tate a ticket and allowed him to go, and that the detective was not credible, we note that these are arguments for the fact finder and not viable contentions on appeal. *See Turner v. State*, 953 N.E.2d 1039, 1053 (Ind. 2011).

1999).  When assessing the admissibility of evidence under Evidence Rule 404(b), the trial court must 1) determine whether the evidence of crimes, wrongs, or other acts is relevant to a matter at issue other than defendant's propensity to commit the charged act and 2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind. Ct. App. 2005).

[31]  The Indiana Supreme Court held in *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993), that the intent exception in Evidence Rule 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. *Baker v. State*, 997 N.E.2d 67, 72 (Ind. Ct. App. 2013).  In other words, the defendant must place his intent at issue before prior-bad-act evidence relevant to intent is admissible. *Id.*

[32]  Here, Tate put his intent at issue when he claimed that the cocaine was for his own personal use and that he did not intend to sell it.  Specifically, during direct examination, Tate testified as follows:

> I am in no way going [to] try to defer responsibility for the cocaine.  I never have.  It was found on me and I never intended on trying to deflect responsibility for it basically.  But the intentions on trying to sell this cocaine is totally off the charts.

Tr. p. 366.  When Tate placed his intent at issue, evidence of his prior drug conviction was admissible under the intent exception to Evidence Rule 404(b).

*See United States v. Puckett,* 405 F.3d 589, 596 (7th Cir. 2005) (explaining that

evidence of a prior conviction for possession of narcotics is especially relevant and probative where defendant conceded that he was in possession of cocaine but stated that the drugs were intended for personal consumption). The trial court did not err in admitting Tate's prior conviction into evidence.[3]

[33] We further note that any error in the admission of this evidence was harmless. Specifically, the improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood that the challenged evidence contributed to the conviction. *Turner*, 953 N.E.2d at 1059. Here, our review of the evidence, including the 5.74 grams of cocaine, the $3000 in cash, and the lack of paraphernalia associated with using cocaine, reveals substantial independent evidence of guilt that satisfies us that there is no substantial

---

[3] Tate also argues that the State did not give him reasonable notice that it would offer his conviction into evidence. Indiana Evidence Rule 404(b) requires the State to provide reasonable notice of the general nature of the evidence it intends to offer at trial. The purpose of this notice provision is to reduce surprise to the defendant and promote the early resolution of questions of admissibility. *Abdul-Musawwir v. State,* 674 N.E.2d 972, 975 (Ind. Ct. App. 1996), *trans. denied*. Failure to comply with the requirements of the rule generally results in the evidence being inadmissible. *Id*. However, where, as here, the State did not rely on any evidence or prior bad acts to prove its case-in-chief, and the defendant placed his intent at issue during direct examination by testifying that he intended to use the drugs for his personal consumption and did not intend to sell them, the State was able to introduce evidence of Tate's prior conviction without resort to the notice provision of Indiana Evidence Rule 404(b). *See United State v. Roper*, 135 F.3d 430, 433 (6th Cir. 1998) (holding that Roper placed his character at issue by his direct testimony in support of his entrapment defense and opened the door for the government to discredit his character during cross examination without resorting to the Rule 404(b) notice requirement).

likelihood that Tate's 2005 conviction contributed to his conviction. Any error is harmless.

## C. Exclusion of Tate's Wife's Testimony

[34] Last, Tate argues that the trial court erred in excluding his wife's testimony that the $3000 found in the console of his car was to pay for their wedding expenses. According to Tate, this evidence "would have rebutted the inference that he 'possessed [the cocaine] with the intent to deliver . . . .'" Appellant's Br. p. 33. However, we need not determine whether the trial court erred in excluding this testimony because where the exclusion of evidence had no likely impact on the jury's decision in light of all the other evidence in the case, any error in its exclusion is harmless. *Allen v. State*, 787 N.E.2d 473, 479 (Ind. Ct. App. 2003), *trans. denied.*

[35] Here, our review of the evidence reveals that Tate possessed 5.74 grams of cocaine worth $850. The typical drug user would use a $20.00 rock of cocaine in four to six hours. The cocaine was individually wrapped in bindles. In addition, no paraphernalia for ingesting cocaine was recovered by the police when Tate was arrested. Moreover, the importance of Tate's wife's excluded testimony was minimal. Tate's wife planned to testify that the money was to be used for their wedding. However, we agree with the State that "it is . . . highly unlikely that the wife's claims that the money was *for* wedding expenses would have done anything to refute the State's theory that the money was *from* drug dealing." Appellee's Br. p. 33.

In light of all other evidence in this case, the exclusion of Tate's wife's testimony likely had no impact on the jury's decision. Any error in its exclusion was therefore harmless. *See Johnson v. State*, 747 N.E.2d 623, 629 (Ind. Ct. App. 2001) (stating that any error in the exclusion of defendant's evidence was harmless where there was substantial independent evidence to support the conviction).

## IV. Sufficiency of the Evidence

Tate also argues that there is insufficient evidence to support his conviction of dealing in cocaine. Specifically, he argues that the State failed to establish that he possessed cocaine with intent to deliver.

Our standard of review for sufficiency of the evidence is well settled. *Davis v. State*, 791 N.E.2d 266, 269 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*. In reviewing sufficiency-of-the-evidence claims, this Court does not reweigh the evidence or assess the credibility of witnesses. *Id*. Rather, we consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences that can be drawn therefrom. *Id.* at 269-70. We will affirm the conviction if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* at 270. A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Id.*

To convict Tate of possession of cocaine with intent to deliver as a Class A felony, the State was required to prove beyond a reasonable doubt that Tate

possessed cocaine in an amount greater than three grams with intent to deliver. *See* Ind. Code Ann. § 35-48-4-1 (West 2012). Because intent is a mental state, a trier of fact must generally resort to the reasonable inferences arising from the surrounding circumstances to determine whether the requisite intent exists. *Wilson v. State*, 754 N.E.2d 950, 957 (Ind. Ct. App. 2001). Circumstantial evidence showing intent to deliver may support a conviction for dealing in cocaine. *Id.* Possession of a large quantity of drugs, money, and plastic bags is circumstantial evidence of intent to deliver. *Id.* The more narcotics a person possesses, the stronger the inference that he intended to deliver and not consume it. *Id.* In addition, a lack of paraphernalia for ingesting cocaine is a factor in determining intent to deal cocaine. *O'Neal v. State*, 716 N.E.2d 82, 90 (Ind. Ct. App. 1999), *reh'g denied*.

[40] In *Davis,* 791 N.E.2d at 266, Davis possessed 5.6225 grams of cocaine in individually wrapped bindles. This Court concluded that based on the amount of cocaine that Davis possessed compared to the amount a drug user would typically use, and the fact that the cocaine was individually wrapped, there was sufficient evidence to sustain Davis's conviction for possession of cocaine with intent to deliver. *Id.* Here, Tate possessed 5.74 grams of cocaine worth $850. The typical drug user would use a $20.00 rock of cocaine in four to six hours. The cocaine was individually wrapped in bindles. Tate also possessed $3000 in cash. In addition, no paraphernalia for ingesting cocaine was recovered by the police when Tate was arrested. Here, as in *Davis*, there is sufficient evidence to support Tate's conviction for dealing in cocaine.

# V. Inappropriate Sentence

[41] Last, Tate argues that his thirty-five-year executed sentence is inappropriate. The Indiana Constitution authorizes independent appellate review and revision of the trial court's sentencing decision. *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Id.* Tate bears the burden on appeal of showing us that his sentence in inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[42] Concerning the nature of the offense, Tate sold cocaine to several customers from his Suburban. Although these offenses are not particularly egregious, it is Tate's character that militates against any downward revision in his sentence. Specifically, Tate has three prior convictions, including two convictions for obstruction of justice and one for dealing in cocaine as a Class A felony, as well as four misdemeanor convictions. In addition, Tate's probation has been revoked twice in the past. Clearly, Tate has not reformed his criminal behavior despite his numerous past contacts with the criminal-justice system. *Abbott v. State*, 961 N.E.2d 1016, 1020 (Ind. 2012). In light of the nature of the offenses and his character, Tate has failed to persuade us that his sentence is inappropriate.

[43] Affirmed.

Baker, J., and Riley, J., concur.