**Derrick LOVE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A04–0006–CR–246.

Court of Appeals of Indiana.

Jan. 11, 2001.

---

**790**

John T. Wilson, Anderson, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Derrick Love ("Love") appeals his convictions for posses-sion of cocaine with intent to deliver[1] as a Class A felony and possession of marijua-na[2] as a Class A misdemeanor. We affirm in part and vacate in part and remand for resentencing.

### Issues

Love presents three issues for review, which we reorder and restate as follows:

I. Whether the trial court erred in denying Love's motion to suppress;

II. Whether Love's cocaine conviction is supported by sufficient evidence; and

III. Whether Love's sentence is manifestly unreasonable.

### Facts and Procedural History

The facts most favorable to the convictions indicate that on the afternoon of November 20, 1999, Officer Chad Boynton ("Boynton") of the Anderson Police Department was on patrol with passenger Donqueline Fulp ("Fulp"), a part-time employee of the Madison County Prosecutor's Office. Boynton noticed that the left turn signal of the car in front of him had been activated for approximately three blocks. The car then turned right without signaling. Upon witnessing this traffic infraction,[3] Boynton suspected that the driver of the car might be intoxicated and initiated a traffic stop. As Boynton approached the car, he saw nineteen-year-old Love, the backseat passenger, sit up quickly, drop his shoulders, and make "secretive" movements with his hands. When Boynton approached the driver of the car, he immediately smelled burnt marijuana. Boynton examined the driver's license and registration and obtained the names of his two passengers.

---

**1.** IND.CODE § 35-48-4-1.

**2.** IND.CODE § 35-48-4-11.

**3.** *See* IND.CODE § 9-21-8-25 (requiring driver to signal intention to turn right or left "not less than the last two hundred (200) feet" before making such turn).

After Officer Chris Frazier ("Frazier") arrived at the scene, Boynton asked the driver of the car to exit the vehicle and informed him that he had smelled marijuana and observed Love's movements. Boynton requested and received the driver's consent to a patdown search for weapons and a search of the inside of his pockets. Boynton found no contraband and asked the driver to sit on the curb. Boynton repeated this procedure with Love with the same result and asked him to sit on the curb. As Boynton was searching the second passenger, both Frazier and Fulp saw Love pull an item from the back of his pants and drop it onto the street. Frazier handcuffed Love and retrieved the dropped item: a clear plastic baggie containing two individually wrapped portions of crack cocaine weighing a total of approximately 11.3 grams.[4] The officers arrested Love and transported him to the police station, where a strip search revealed a marijuana cigarette in Love's rectum. Love also possessed $331 in cash but did not possess any paraphernalia for ingesting crack cocaine.

On November 22, 1999, the State charged Love with possession of cocaine with intent to deliver as a Class A felony and possession of marijuana as a Class A misdemeanor. On February 14, 2000, the trial court denied Love's motion to suppress.[5] On February 16, 2000, a jury found Love guilty as charged. On February 28, 2000, the trial court sentenced Love to concurrent terms of fifty years on the cocaine conviction and one year on the marijuana conviction.

## Discussion and Decision

### I. Motion to Suppress

We first address the trial court's denial of Love's motion to suppress. Love argues that Boynton's traffic stop was illegal and that the evidence obtained as a result of the stop should have been suppressed.

The trial court has broad discretion in ruling on the admissibility of evidence. We will reverse a ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. The decision of a trial court to deny a motion to suppress is reviewed as a matter of sufficiency. In doing so, we neither judge the credibility of witnesses nor do we reweigh the evidence. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This guarantee provides that searches and seizures which take place without prior judicial authorization are *per se* unreasonable pursuant to the Fourth Amendment, subject only to a few, narrow exceptions. A brief detention is permitted when a police officer believes a person has committed an infraction or an ordinance violation.

*Conwell v. State*, 714 N.E.2d 764, 766 (Ind. Ct.App.1999) (citations omitted).

Love's argument regarding the legality of the traffic stop is based on Indiana Code Section 9–21–8–24, which provides in relevant part that a person may not "turn a vehicle from a direct course upon a highway ... unless the movement can be made with reasonable safety." We find this argument unavailing, given that the driver violated Indiana Code Section 9–21–8–25 by failing to activate his right turn signal before making a right turn. Thus, Boynton was clearly justified in stopping the vehicle in which Love was riding to investigate this traffic infraction. *See Peck v. State*, 712 N.E.2d 951, 951 (Ind.1999) (upholding both validity of traffic stop for defendant's failure to signal before turning pursuant to IND.CODE

---

4. A canine unit dispatched to the scene detected trace amounts of burnt marijuana in the car ashtray. The officers determined that the driver was not impaired and allowed him to leave the scene with the second passenger.

5. Love's motion to suppress does not appear in the record.

§ 9–21–8–25 and admission of evidence obtained during stop). Because Love challenges only the validity of the initial stop and does not question the validity of the subsequent search for and seizure of the cocaine and the marijuana, we need not address this issue further.

## II. Sufficiency of the Evidence

■ Love contends that there is insufficient evidence to support his conviction for possession of cocaine with intent to deliver. Although Love admitted at trial to possessing the cocaine, he challenges the sufficiency of the evidence regarding his intent to deliver it. See IND.CODE § 35–48–4–1 (requiring knowing or intentional possession of three or more grams of cocaine with intent to deliver for Class A felony conviction). When reviewing a sufficiency challenge, we neither reweigh the evidence nor judge witness credibility. See O'Neal v. State, 716 N.E.2d 82, 89 (Ind.Ct.App. 1999), trans. denied. " 'The trier of fact is free to believe or disbelieve witnesses, as it sees fit.' " McClendon v. State, 671 N.E.2d 486, 488 (Ind.Ct.App.1996) (citation omitted). "We will consider only the evidence most favorable to the judgment, as well as inferences to be drawn therefrom. We will overturn a conviction 'only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " O'Neal, 716 N.E.2d at 89 (citations omitted). "Every reasonable hypothesis of evidence need not be overcome on appeal; it is only necessary that an inference that supports the verdict may be reasonably drawn." Id. at 90.

■ "Because intent is a mental state, triers of fact generally must resort to the reasonable inferences arising from the surrounding circumstances to determine whether the requisite intent exists." McGuire v. State, 613 N.E.2d 861, 864 (Ind.Ct.App.1993), trans. denied. "Circumstantial evidence showing possession with intent to deliver may support a conviction. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally." Berry v. State, 574 N.E.2d 960, 963 (Ind.Ct.App. 1991) (citations omitted), trans. denied. Love possessed approximately 11.3 grams of crack cocaine, which Anderson Police Department Drug Task Force Detective Clifford Cole ("Cole") testified was consistent with an amount possessed by a "mid level type of a dealer," rather than for strictly personal use. Cole testified that "lower street level dealers" usually sell crack cocaine in half-gram rocks worth $40 to $50 and that "mid level dealers" sell "eight balls" of crack cocaine weighing from "three to three and a half grams ... to maybe ... half an ounce." Cole stated that he had never seen a user possess 11.3 grams of crack cocaine, since most users smoke the cocaine as soon as they get it. Cole further stated that Love's lack of paraphernalia to ingest the crack cocaine was more consistent with dealing than with using the drug and that "depending on what they have sold at the time, [street level dealers] could have a hundred dollars to several hundred dollars on them."

At trial, Love claimed that he had won $331 shooting dice in a gambling house; that he had retrieved the cocaine after he saw someone "hiding" the drug near the gambling house; that he smoked approximately $200 worth of cocaine per day; and that he was walking "to a little garage" to smoke the cocaine when the driver of the car picked him up. We must reject Love's invitation to reweigh the evidence. The jury could have reasonably inferred Love's intent to deal crack cocaine from his possession of several hundred dollars and 11.3 grams of the drug with no means to ingest it. We therefore affirm Love's conviction.

## III. Reasonableness of Sentence

■ Finally, Love asserts that his fifty-year sentence for possession of cocaine with intent to deliver is manifestly unreasonable. Love's cocaine conviction is a Class A felony, for which the presumptive

sentence is "thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances[.]" IND.CODE § 35–50–2–4. The trial court in this case imposed the maximum sentence, which we will not revise unless it is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). "In determining whether a sentence is manifestly unreasonable, 'the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so.' " *Evans v. State*, 725 N.E.2d 850, 851 (Ind.2000) (citations omitted). "Because reasonable people will differ as to the appropriate sentence in any given case, we must refrain from merely substituting our opinions for those of the trial court." *Everroad v. State*, 701 N.E.2d 1284, 1286 (Ind. Ct.App.1998).

 When imposing an enhanced sentence, the trial court must " '(1) identify all significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances.' " *Allen v. State*, 722 N.E.2d 1246, 1250–51 (Ind.Ct.App.2000) (citation omitted); *see also* IND.CODE § 35–38–1–7.1 (outlining considerations in imposing sentence). "Even one aggravating circumstance will support the enhancement of a sentence." *Casey v. State*, 676 N.E.2d 1069, 1073 (Ind.Ct.App.1997). "A trial court is 'not required to find the presence of mitigating factors' or to give the same weight or credit to mitigating evidence as does the defendant, nor is it 'obligated to accept the defendant's assertions as to what constitutes a mitigating circumstance.' " *Allen*, 722 N.E.2d at 1252 (citations omitted).

The trial court sentenced Love as follows:

The Court finds aggravating circumstances to exist in this case, prior criminal history, which is well documented and articulated in the record. He's violated his probation. He unfortunately has not attempted to rehabilitate himself and given so many opportunities and failed each time. He needs correctional rehabilitative treatment that can be best provided by long term commitment to the Department of Corrections [sic]. Interesting to note that one of the excuses he used in in his defense in this case was that he was involved in illegal gambling, which indicates that he even when a free man can not behave well in society, even by his own admissions.

The trial court specified no mitigating factors. Love's lengthy juvenile history, beginning with an unadjudicated charge of criminal mischief at age twelve, lists adjudications for possession of marijuana, resisting arrest, disorderly conduct, consumption of alcohol, driving while suspended, and visiting a common nuisance. Love's juvenile history also lists curfew and probation violations but contains no juvenile adjudications that would have been felonies if committed by an adult. In November 1998, Love was charged with felony murder but was acquitted by a jury. At the time of his sentencing hearing in the instant case, Love had charges pending for an alcoholic beverage violation, contributing to the delinquency of a minor, providing obscene matter and performances before minors, resisting law enforcement, and disorderly conduct.[6]

 Leaving aside the sufficiency of the trial court's sentencing statement and Love's proposed mitigating factors, we turn to the supreme court's recent disposition of a similar case in *Evans*. *See Trowbridge v. State*, 717 N.E.2d 138, 150 (Ind. 1999) ("The constitutional requirement that a sentence be proportionate to the offense does not require us to compare sentences among those convicted of the same or similar crimes. However, we are

6. All pending charges were scheduled for trial in Anderson City Court on March 7, 2000.

not precluded from doing so." (citation omitted)). In *Evans*, a nineteen-year-old defendant was sentenced to fifty years for dealing in cocaine as a Class A felony:

Purveyors of cocaine and illegal narcotic drugs are a menace to society. Our legislature has determined that the crime of knowingly or intentionally delivering cocaine weighing three grams or more is so reprehensible that it warrants sentencing as a class A felony. This class of high sentencing severity also applies to other major crimes including, for example, kidnapping, rape while armed with a deadly weapon, robbery resulting in serious bodily injury, arson resulting in bodily injury, and burglary resulting in bodily injury. The punishment prescribed by statute for a conviction for a class A felony is imprisonment "for a fixed term of thirty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances." As to the crime of dealing in cocaine, the maximum available sentence as a class A felony would be fifty years regardless of whether the quantity of cocaine involved was three grams or three tons. *The maximum possible sentences are generally most appropriate for the worst offenders.*

When he committed this offense, the defendant was nineteen years old. The crime occurred when a confidential police informant, wearing a body wire and carrying marked money, went to the defendant's home. The defendant's mother permitted him to enter and advised him that the defendant was asleep in his room. The police informant woke the defendant and asked if he had any drugs for sale. The defendant responded that he had obtained two ounces of cocaine, but had already sold one and

one-half ounces, so he could sell the informant only one-quarter of an ounce. The two agreed on a price of $325. The informant paid $225 and then left to get the rest of the money, taking with him the 6.55 grams (approximately one-quarter of an ounce) of cocaine purchased. The trial evidence also revealed that the same informant attempted to make another cocaine purchase from the defendant, but that the defendant refused, expressing concern for the informant's new family. The defendant's comments to the informant, however, indicated the defendant's intention to continue selling drugs.

Despite his youth, the defendant had already accumulated a record of unlawful activity. He had three juvenile adjudications for offenses that would be felonies if committed by an adult (theft, criminal trespass, and auto theft) and one adult misdemeanor conviction for receiving stolen property. None of the offenses involved violence, but the defendant was already on probation at the time of this offense and had also previously violated his juvenile probation.

We conclude that, in light of the nature of the offense and the character of the offender, the maximum sentence allowed by law for dealing in cocaine as a class A felony is clearly, plainly, and obviously unreasonable in this case. We grant transfer and vacate the fifty-year sentence and remand to the trial court with instructions to impose the presumptive sentence of thirty years.

*Id.* at 851–52 (emphasis added) (footnotes and citations omitted).

The State attempts to distinguish *Evans* by pointing to Love's murder acquittal, his pending charges, and the larger quantity of cocaine in his possession.[7] However, we note that "the primary consideration of the

---

**7.** The State mischaracterizes the facts of *Evans* by asserting that Evans "had three juvenile misdemeanor convictions, *none* of which would have been felonies if committed by an adult[.]" Appellee's Brief at 10–11 (emphasis added). We remind the State of its duty of candor toward the tribunal, especially regarding statements of material fact. *See* Ind. Professional Conduct Rule 3.3(a)(1).

trial court during sentencing is rehabilitation of the defendant." *Hardebeck v. State,* 656 N.E.2d 486, 490 (Ind.Ct.App. 1995) (citing IND. CONST. art. 1, § 18 ("The penal code shall be founded on the principles of reformation, and not of vindictive justice.")), *trans. denied.* Love's pre-sentence investigation report indicates alcohol, marijuana, and crack cocaine usage, failure to comply with court-ordered substance abuse treatment, lack of steady employment, and expulsion from high school in the eleventh grade. In sentencing Love to fifty years' imprisonment, the trial court has effectively determined that Love is beyond rehabilitation at age nineteen. With the exception of the murder charge, of which he was acquitted, Love has never been accused or convicted of any violent crimes. Thus, we cannot conclude that he is the worst type of offender deserving of the maximum possible sentence. *Cf. Valle v. State,* 550 N.E.2d 746 (Ind.1990) (fifty-year sentence for cocaine dealing; defendant possessed 112.3 grams of "exceptionally pure cocaine" and killed and wounded two potential witnesses before trial); *Freeman v. State,* 541 N.E.2d 533 (Ind.1989) (consecutive fifty-year sentences for cocaine dealing and conspiracy to commit cocaine dealing; defendant possessed one kilogram of 92% pure cocaine and a smaller amount of 94% pure cocaine).[8]

■ While we may not simply substitute our opinion for that of the trial court, Article 7, Section 6 of the Indiana Constitution specifically charges this court with responsibility to review and revise sentences "to the extent provided by rule," and this authority is found in the text of the Constitution and is independent of our general appellate jurisdiction. *Bluck v. State,* 716 N.E.2d 507, 516 (Ind.Ct.App. 1999). Accordingly, we conclude that the maximum statutory penalty imposed in this case is clearly, plainly, and obviously unreasonable in light of the nature of the

offense and the character of the offender. We therefore vacate Love's fifty-year sentence and remand to the trial court with instructions to impose the presumptive sentence of thirty years. In all other respects, we affirm the judgment of the trial court.

Affirmed in part, vacated in part, and remanded.

SULLIVAN and NAJAM, JJ., concur.

---

**8.** Freeman's "sentence was enhanced an additional thirty (30) years on an additional habitual offender determination, for a total sentence of one hundred thirty (130) years." 541 N.E.2d at 534.