## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2015, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Reyes-Valdes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 13, 2015

Court of Appeals Case No.
15A01-1406-CR-237

Appeal from the
Dearborn Superior Court

The Honorable Sally A.
Blankenship, Judge

Cause No. 15D02-1310-FA-23

**Kirsch, Judge.**

[1] Following a jury trial, David Reyes-Valdes ("Reyes-Valdes") was convicted of one count of dealing in cocaine as a Class A felony and one count of conspiracy

to commit dealing in cocaine as a Class A felony. The trial court sentenced him to fifty executed years on each count, to be served concurrently.

[2] Reyes-Valdes appeals his conviction and sentence, raising the following issues:

I. Whether the State presented sufficient evidence to support his convictions;

II. Whether his convictions for both dealing in cocaine and conspiracy to commit dealing in cocaine violate Indiana's constitutional prohibition against double jeopardy; and

III. Whether his sentence was inappropriate in light of the nature of the offense and his character.

[3] The State concedes that the evidence was insufficient to support a conviction for dealing in cocaine. We therefore vacate Reyes-Valdes's conviction and sentence for dealing in cocaine. Concluding that the State presented evidence sufficient to support a conviction for conspiracy to commit dealing in cocaine, we affirm as to that conviction but revise the sentence to forty years executed in the Indiana Department of Correction and remand with instructions.

# Facts and Procedural History[1]

[4] Reyes-Valdes met Adalberto Raygoza ("Raygoza") in a bar in Cicero, Illinois. At a later date, they set up a large cocaine transaction. Reyes-Valdes agreed to pay Raygoza $70,000 to transport two kilos of cocaine from Chicago, Illinois to Cincinnati, Ohio. Raygoza's source in Chicago supplied the cocaine for $65,000.[2] Raygoza paid Chicota $15,000 up front and expected $70,000 from Reyes-Valdes upon delivery in Cincinnati.

[5] Raygoza offered Manuel Maldonado ("Maldonado") $2,000 to drive the cocaine from Chicago to Cincinnati. Maldonado agreed but did not know who the recipient would be in Cincinnati. Maldonado testified that he had never met Reyes-Valdes and that Raygoza was "just paying [him] to take the kilos to Cincinnati." Tr. at 311. Raygoza and Maldonado, both residents of Chicago, agreed to deliver the cocaine to Reyes-Valdes on October 18, 2013.

[6] On October 15, 2013, three days before the intended delivery, Reyes-Valdes and Raygoza exchanged text messages in Spanish, translated by Raygoza at trial as follows:

> [5:01 PM, Raygoza:]     [W]hat's up dude . . . .
> [5:02 PM, Reyes-Valdes:]   [H]ere waiting to work . . . .

---

[1] We heard oral argument on April 8, 2015, at Paoli High School in Paoli, Indiana. We thank counsel for their capable advocacy, and extend our gratitude to Paoli's students, faculty, and administration for their hospitality.

[2] The street value for that amount of cocaine is "at least two hundred thousand dollars." Transcript at 499.

> [5:37 PM, Raygoza:]      [W]hat's going on . . . .
>
> [5:41 PM, Reyes-Valdes:]      [Y]ou got gym shoes or what. . . .
>
> [6:54 PM, Raygoza:]      Yes.

Tr. at 331-32; State's Ex. 46. Raygoza testified that "waiting to work" meant "waiting for the coke," and that "gym shoes" was code for cocaine. Tr. at 331.

[7] On the morning of October 18, 2013, Maldonado drove to Raygoza's house. When Maldonado arrived, Raygoza emerged from the house, placed two kilos of cocaine in Maldonado's trunk, and gave Maldonado an address for delivery. They left immediately, riding in separate vehicles. Maldonado drove in front, and Raygoza followed.

[8] Later that day, Maldonado and Raygoza were intercepted by Trooper James Wells of the Indiana State Police Drug Enforcement Section ("Trooper Wells"). Trooper Wells was patrolling I-74 in Dearborn County when he observed a gold Chevy Malibu and a black Nissan Maxima traveling together. The vehicles were "bumper to bumper" and made lane changes together. Tr. at 43. Both vehicles had Illinois license plates. Based on his training and experience as a highway interdiction officer, Trooper Wells suspected drug trafficking.

[9] Trooper Wells pulled over both vehicles two miles from the Indiana-Ohio border for following too closely and unsafe lane movement. Raygoza was driving the Maxima, and Maldonado was driving the Malibu. Raygoza denied that he was traveling with the driver of the Malibu, but Maldonado confirmed they were traveling together. Trooper Wells immediately contacted the

Regional Enforcement Narcotics Unit ("RENU")[3] and requested a canine unit to assist with the stop. The RENU canine handler, Deputy Anthony Lange ("Deputy Lange") responded to the call, but Trooper Wells obtained consent to search the vehicles and did not utilize Deputy Lange's canine partner. Pursuant to that consent, Deputy Lange and Trooper Wells searched the vehicles and discovered the two kilos of cocaine in the trunk of the Malibu.

[10] The officers arrested both men for dealing in cocaine and arranged for a controlled delivery to ascertain the final recipient of the cocaine.[4] Raygoza agreed to cooperate with the investigation and identified Reyes-Valdes as the final recipient.[5] Raygoza told officers that Reyes-Valdes initially instructed him to deliver the cocaine to a Residence Inn[6] but subsequently changed the delivery location to a private residence at 2215 Washington Avenue. RENU agents set up surveillance around the Washington Avenue residence and observed Reyes-

---

[3] RENU is a multi-jurisdictional task force charged with investigating large-scale narcotics operations and trafficking in the Greater Cincinnati area. RENU closely monitors I-74 because it is a "major thoroughfare" connecting Cincinnati to Indianapolis and Chicago. Tr. at 94.

[4] Raygoza and Maldonado were arrested in Indiana, but the cocaine was destined for Ohio. Because RENU policy did not permit the officers to bring the traffickers (or the cocaine) across state lines to finish the delivery, RENU never intended to *actually* deliver the cocaine to Reyes-Valdes.

[5] Raygoza told police that he was delivering the cocaine to someone who went by the name "Cocho." Tr. at 342. At trial, Raygoza testified: "At that point I knew him as Cocho. Now I know him as Reyes." *Id.* at 341.

[6] Reyes-Valdes sent Raygoza the following text messages on October 17, 2013:

    [9:22 PM:]   Residence Inn Cincinnati North/Sharonville http://goo.gl/maps/1ju65

    [9:24 PM:]   11689 chester rd cincinati oh 45246 [sic]

State's Ex. 46, 47.

Valdes park a silver Volkswagen Passat with an Illinois license plate outside the residence.

[11] At the request of RENU agents, Raygoza called Reyes-Valdes to change the delivery location to a public place. After Reyes-Valdes agreed to meet Raygoza at a White Castle restaurant instead, RENU agents observed Reyes-Valdes walk from the Washington Avenue residence to a white Chevy Equinox in a nearby parking lot. Reyes-Valdes got in, and the Equinox proceeded to a gas station adjacent to the White Castle. RENU agents immediately converged on the Equinox, removed Reyes-Valdes from the backseat, and placed Reyes-Valdes under arrest. Officers located a set of car keys in his pocket and a cell phone in the backseat. The car keys were for the Passat parked at 2215 Washington Avenue, and the cell phone had been used to contact Raygoza's phone number.

[12] RENU agents obtained a search warrant for the Passat parked at the Washington Avenue residence after an exterior canine sniff of the vehicle resulted in a positive indication for narcotics. The Passat was registered to Javier Contreras Martinez ("Contreras") at 2216 St. Louis Avenue in Chicago. During the search officers located a bill for the Residence Inn, several other sale receipts, and what appeared to be Reyes-Valdes's wallet, which contained a fake ID, a Residence Inn key card, and an Extended Stay America key card. The bill for the Residence Inn showed a "Martinez Contreras" registered, with a check-in date of October 12, 2013, and it listed the same address that Reyes-Valdes sent in a text message to Raygoza on October 17, 2013. Tr. at 275. The Illinois identification card recovered from the wallet had a picture of Reyes-

Valdes but listed the name "Alvera Gonzales." *Id.* at 272. The address on the identification card was the same address listed on the vehicle registration – 2216 St. Louis Avenue, Chicago. The police also located two sale receipts that referenced the name "Alvera Gonzales." *Id.* at 279-80. No drugs were found.

[13] The search warrant also covered Room 221 of the Extended Stay motel. The room was rented to Contreras, but officers used the Extended Stay key card found in Reyes-Valdes's wallet to open the door. Inside, officers found items commonly used to package narcotics for redistribution: a FoodSaver vacuum sealer, bags for the vacuum sealer, gallon size freezer bags, and a digital scale. Officers also found a ledger. The ledger reflected "very, very large" amounts, including two entries for over $300,000. *Id.* at 497-98. At trial, Reyes-Valdes admitted that he knew Contreras and that he had been in Room 221. He testified that he had been to the motel room because he and Contreras had "gone out to eat" on October 17, 2013. *Id.* at 404.

[14] The State of Indiana charged[7] Reyes-Valdes, Raygoza, and Maldonado in relevant part as follows:

> Count 1: . . . On or about October 18, 2013, . . . David Reyes-Valdes, Adalberto Raygoza, and Manuel I. Maldonado did knowingly possess, with intent to deliver, cocaine, pure or adulterated, in an amount three (3) grams or more. . . .

---

[7] Reyes-Valdes also faced charges in Ohio, but those charges were dismissed so that Reyes-Valdes, Raygoza, and Maldonado could be tried together as codefendants in Indiana.

Count 2: . . . On or about October 18, 2013, . . . David Reyes-Valdes, Adalberto Raygoza, and Manuel I. Maldonado, with intent to commit the felony of Dealing in Cocaine in an Amount Three Grams or More, did agree with each other to commit said crime, and Manuel I. Maldonado did perform an overt act in furtherance of the agreement, to-wit: did operate a motor vehicle with approximately two kilos of cocaine in said vehicle.

Appendix of Appellant at 20-21.

Prior to trial, Raygoza and Maldonado each pled guilty to one count of conspiracy to commit dealing in cocaine as a Class B felony, and both testified for the State at trial. Raygoza admitted at trial that he had been involved in dealing drugs for several years prior to his arrest in this case. As to the dealing count, the State maintained that it did not have to prove that Reyes-Valdes possessed cocaine in Dearborn County on the dates alleged, only that he aided, induced, or caused another person to do so, and the jury was instructed on accomplice liability.

After the presentation of evidence the jury found Reyes-Valdes guilty on both counts. The trial court sentenced him to fifty executed years on each count, to be served concurrently in the Indiana Department of Correction. Reyes-Valdes now appeals.

## Discussion and Decision

## I. Sufficiency of the Evidence

Reyes-Valdes contends that the evidence presented at trial was insufficient to support his convictions for dealing in cocaine and conspiracy to commit dealing

in cocaine, both Class A felonies. When reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge witness credibility. *Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005). "We consider the evidence favorable to the jury's verdict and all reasonable inferences which can be drawn from it." *Jenkins v. State*, 686 N.E.2d 1278, 1281 (Ind. 1997). The conviction will be affirmed unless no reasonable trier of fact could find the elements of the offense proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

[18] To convict Reyes-Valdes of conspiracy to commit dealing in cocaine, the State was required to prove beyond a reasonable doubt that (1) Reyes-Valdes agreed with another person to commit the felony of dealing in cocaine; and (2) either Reyes-Valdes or the persons with whom he made the agreement "performed an overt act in furtherance of the agreement." Ind. Code § 35-41-5-2.

[19] Reyes-Valdes does not dispute the "overt act" of Maldonado transporting two kilos of cocaine in the trunk of the Malibu. Rather, Reyes-Valdes challenges the agreement element, arguing that "this case boils down to . . . Raygoza's word that he intended to sell drugs to Reyes-Valdes." Brief of Appellant at 19. Reyes-Valdes denies that "gym shoes" really meant cocaine, tr. at 331, and emphasizes the fact that he was never found to possess the large amount of cash Raygoza was expecting to receive. He claims that Raygoza was supposed to deliver a pair of Jordan 11 shoes during the visit to Cincinnati, not cocaine.

[20] Reyes-Valdes essentially argues that Raygoza's testimony was not credible because he had a motive to lie. *See* Br. of Appellant at 19 ("Caught by the side of the interstate in Indiana with police offering to help him if he cooperated, Raygoza offered up Reyes-Valdes. . . . He had a motive to lie."). In the absence of incredibly dubious testimony, however, we will not encroach upon the jury's responsibility to judge witness credibility. *Baber v. State*, 870 N.E.2d 486, 490 (Ind. Ct. App. 2007), *trans. denied*.

[21] The "incredible dubiosity" rule "is applicable only when a lone witness offers inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001). Application of this rule is rare and limited to cases in which a sole witness presents inherently improbable testimony that no reasonable person could believe. *Nolan v. State*, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007), *trans. denied*.

[22] The incredible dubiosity rule does not apply in this case because the evidence was not from a single witness, and there was circumstantial evidence of Reyes-Valdes's guilt. Maldonado testified that Raygoza was paying him to transport the cocaine to a particular address in Cincinnati. The text messages and phone calls between Reyes-Valdes and Raygoza confirm that Reyes-Valdes was communicating with Raygoza in the days leading up to the delivery and as the cocaine was being transported. Raygoza testified that the delivery location changed several times, and the State admitted text messages in which Reyes-Valdes sent Raygoza two of the three addresses. When Raygoza called Reyes-

Valdes to change the location to White Castle, the call was monitored and recorded.[8] Officers testified to Reyes-Valdes's movements and presence at two of the delivery locations. Reyes-Valdes also had a key card for a motel room in which officers found a ledger with very large dollar amounts and items commonly used to package narcotics for redistribution. Reyes-Valdes admitted at trial that he had been to the motel room rented to Contreras, and he was seen driving Contreras's car alone, just prior to his arrest.

[23] In addition, Raygoza's testimony was not inherently contradictory or equivocal, notwithstanding the fact that certain details contradicted his prior statements to police. In his first statement to police, made on the shoulder of I-74, Raygoza did lie about traveling with Maldonado. In a subsequent interview, he denied knowing his supplier in Chicago and told police that Reyes-Valdes offered to sell cocaine *to him*. Raygoza later revealed the name of his supplier and admitted at trial that he lied when he told police that Reyes-Valdes offered to sell him cocaine. Once Raygoza decided to cooperate, he assisted the police by making phone calls to Reyes-Valdes. As our supreme court has stated, "witness testimony that contradicts witness's earlier statements does not make such testimony incredibly dubious." *Stephenson v. State*, 742 N.E.2d 463, 498 (Ind. 2001), *cert. denied*, 534 U.S. 1105 (2002). Nor does a motive to fabricate testimony. *See Jenkins v. State*, 686 N.E.2d 1278, 1281 (Ind.

---

[8] Reyes-Valdes argues that the communications between himself and Raygoza are "innocent on the surface with no mention of cocaine or any drug transactions." Br. of Appellant at 15. It is true that cocaine is never explicitly mentioned, but this is hardly surprising given the possibility of interception.

1997) (rejecting the defendant's claim that testimony was incredibly dubious because the witnesses had motives to lie).

[24] In short, Reyes-Valdes fails to demonstrate that no reasonable person could believe Raygoza's testimony. Raygoza unequivocally and consistently identified Reyes-Valdes as the intended recipient of the cocaine, and there is circumstantial evidence to support Reyes-Valdes's guilt. We, therefore, cannot say that Raygoza's testimony was so inherently improbable as to require a reversal of the jury's verdict. Accordingly, as to the broader question of sufficiency, we conclude there was sufficient evidence for the jury to find Reyes-Valdes guilty of conspiracy to commit dealing in cocaine as a Class A felony. Reyes-Valdes merely asks us to reweigh the evidence and assess the credibility of witnesses, which we will not do. *See Wright*, 828 N.E.2d at 905-06.

[25] As to the dealing in cocaine conviction, the State rightly concedes that the evidence was insufficient. We agree that there was insufficient evidence to establish that Reyes-Valdes knowingly possessed cocaine with intent to deliver, even as an accomplice. *See In re J.L.*, 599 N.E.2d 208, 212–13 (Ind. Ct. App. 1992), *trans. denied* (reversing the defendant's conviction for dealing in cocaine as an accomplice where the evidence presented at trial was insufficient to support a finding that the defendant ever possessed cocaine, either actually or constructively). We, therefore, vacate Reyes-Valdes's conviction and sentence for dealing in cocaine as a Class A felony.

# II. Double Jeopardy

Because we vacate Reyes-Valdes's conviction for dealing in cocaine on sufficiency grounds, the issue of double jeopardy is moot and need not be addressed.

# III. Appropriateness of the Sentence

Reyes-Valdes also contends that his sentence is inappropriate in light of the nature of his offense and his character and asks this court to reduce his sentence. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Whether we regard a sentence as appropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

We agree that Reyes-Valdes's sentence is inappropriate. A person who commits a Class A felony is subject to a sentence of twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a) (2013). The trial court sentenced Reyes-Valdes to the maximum sentence of fifty years, all executed at the Indiana Department of Correction. When imposing the sentence, the trial court found:

> [T]he Defendant poses a risk to society in his activities involving multi-state, high level organized drug dealing activity. The large amount of cocaine involved – in excess of two thousand (2,000) grams of the

element of the crime which required the amount of three (3) grams or more is an additional aggravating circumstance. Further the Court finds that the Defendant has shown a prior disregard of the laws of the United States by going back and forth from the United States to Mexico illegally and prior criminal history is considered.

App. of Appellant at 163-64.

[29] Reyes-Valdes was twenty-two years old at the time of the offense, and his prior "criminal history" consists of driving without a license and disobeying a traffic control device. He has no prior *criminal* convictions. *See Rosenbaum v. State*, 930 N.E.2d 72, 74 (Ind. Ct. App. 2010) (noting that "traffic infractions are civil, rather than criminal, in nature"), *trans. denied*. Yet he received the maximum sentence permitted by statute. Our supreme court has stated that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002) (citation omitted).

[30] In *Evans v. State*, 725 N.E.2d 850, 851 (Ind. 2000), our supreme court reduced a fifty-year sentence for dealing in cocaine to the presumptive thirty years. Evans was nineteen years old and on probation at the time of the offense. He delivered 6.55 grams of cocaine and had a criminal record including three juvenile adjudications for offenses that would be felonies if committed by an adult. In *Love v. State*, 741 N.E.2d 789, 793-94 (Ind. Ct. App. 2001), this court, citing *Evans*, likewise reduced a fifty-year sentence for dealing in cocaine to the presumptive thirty years. The nineteen-year-old defendant possessed 11.3 grams of cocaine and had a lengthy juvenile history, including an acquittal for

felony murder. The State attempted to distinguish *Evans* by pointing to the murder acquittal and the larger quantity of cocaine in Love's possession. We disagreed and reduced the sentence because "the trial court ha[d] effectively determined that Love is beyond rehabilitation at age nineteen." *Id.* at 795.

[31] As this court stated in *Love*, "[t]he primary consideration of the trial court during sentencing is rehabilitation of the defendant." *Id.* at 794-95 (citation omitted). By sentencing Reyes-Valdes to the maximum possible sentence, the trial court has effectively determined that he is beyond rehabilitation at age twenty-two, notwithstanding his complete lack of criminal history. But Reyes-Valdes is not within the class of offenders for whom the maximum possible sentence is appropriate. *See, e.g.*, *Valle v. State*, 550 N.E.2d 746, 747 (Ind. 1990) (fifty-year sentence for dealing in cocaine where defendant possessed 112.3 grams of cocaine and shot two potential witnesses before trial, killing one); *Danner v. State*, 900 N.E.2d 9, 13 (Ind. Ct. App. 2008) (fifty-year sentence for possession of cocaine where the defendant possessed more than twenty-four grams of cocaine within twenty to fifty feet of a day care and had an "extensive" criminal history, including dealing in cocaine, possession of cocaine, and robbery); *Hale v. State*, 875 N.E.2d 438, 446 (Ind. Ct. App. 2007), (fifty-year sentence for dealing in cocaine for defendant with four felony convictions who was on parole for dealing in cocaine at the time of the offense), *trans. denied*.

[32] Reyes-Valdes is not beyond rehabilitation and is not "the worst of the worst." *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). Nevertheless, the

extraordinarily large amount of cocaine involved indicates that this was not an ordinary drug transaction and that the advisory sentence would also be inappropriate. We, therefore, remand this case to the trial court with instructions that his sentence be reduced to forty years executed in the Indiana Department of Correction.

[33] Affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and Brown, J., concur.