## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2019, 10:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Micah G. Hayes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 26, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1833<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Michael A. Christofeno, Judge<br><br>Trial Court Cause No.<br>20C01-1609-F2-21 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Micah Hayes (Hayes), appeals his conviction for dealing in methamphetamine, a Level 2 felony, Ind. Code § 35-48-4-1.1(2)(C), (e)(1).

We affirm.

# ISSUES

Hayes presents three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting certain evidence;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to support Hayes' conviction; and

(3) Whether Hayes' sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On September 12, 2016, the Elkhart Police Department was monitoring a suspected drug house in Elkhart County, Indiana. A man, later identified as Hayes, was seen leaving the suspected drug house driving a silver Chevy Avalanche. Indiana State Trooper Camryn Hottell (Trooper Hottell) was thereafter radioed to follow the silver Chevy Avalanche and pull it over for any traffic infraction. Soon thereafter, Trooper Hottell observed Hayes' silver Chevy Avalanche and she followed it east on Beardsley Avenue, then north on Cassopolis. At the intersection of Cassopolis and Baldwin, Hayes properly

signaled his turn, but made an immediate right turn into the parking lot of BJ Stars, a restaurant, causing Trooper Hottell to slam on her brakes to avoid a collision. Also, because Hayes had failed to signal while entering the BJ Stars' parking lot, Trooper Hottell activated her emergency lights and initiated a traffic stop.

[5] As Trooper Hottell exited her vehicle, Hayes also exited his vehicle and began moving toward Trooper Hottell. Hayes was yelling at Trooper Hottell, asking her why she pulled him over. Because Hayes was being confrontational, Trooper Hottell displayed her Taser and repeatedly ordered Hayes to stop moving toward her and to stop yelling. Moments later, other officers arrived at the scene to aid Trooper Hottell, including a K-9 officer. After another officer drew his firearm, Hayes complied with Trooper Hottell's commands. Trooper Hottell handcuffed Hayes and directed him to her vehicle. While standing outside the vehicle, Hayes again questioned Trooper Hottell as to why she had stopped him. Trooper Hottell explained to Hayes that she had stopped him for failing to properly use his turn signal. Hayes thereafter admitted his mistake.

[6] While Trooper Hottell was dealing with Hayes, Officer Jason Ray (Officer Ray) of the Elkhart Police Department and his narcotics-trained K-9 officer conducted a dog sniff around Hayes' vehicle by walking around the perimeter of the vehicle. The K-9 alerted to the presence of narcotics on the back door behind the driver's seat. Due to the K-9's alert, Officer Ray opened the back door to Hayes' vehicle. The K-9 jumped in and he further alerted to a lunchbox inside the vehicle. Inside the lunchbox, Officer Ray found a clear plastic bag

containing a crystalized rock substance, which was later determined to be 27.84 grams of methamphetamine. Also, there was a can with a false bottom that contained six individually wrapped baggies containing crystalized rocky substances. Subsequent laboratory testing revealed that each of the six baggies contained one gram of methamphetamine.

[7] On September 16, 2016, the State filed an Information, charging Hayes with Level 2 felony dealing in methamphetamine. Prior to trial, Hayes filed a motion to suppress any evidence obtained from the search of his vehicle. On June 4 through June 6, 2018, a jury trial was held. At the start of his trial, Hayes resurrected his suppression motion, but was denied. At the close of the evidence, the jury found Hayes guilty as charged. On July 12, 2018, the trial court sentenced Hayes to thirty years in the Department of Correction, with five years suspended to probation.

[8] Hayes now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of the Evidence*

[9] The admission or exclusion of evidence falls within the sound discretion of the trial court, and its determination regarding the admissibility of evidence is reviewed on appeal only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Doolin v. State*, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012).

[10]   Hayes claims that the stop and search of his silver Chevy Avalanche violated Article 1, Section 11 of the Indiana Constitution.[1]

[11]   Prior to the commencement of the jury trial, Hayes filed a motion to suppress, but that motion was denied.  At the start of his trial, Hayes revived his motion, but was again denied.  When the State offered evidence derived from the search of his vehicle, Hayes failed to make a contemporaneous objection or a continuing objection at trial that the stop and search of his silver Chevy Avalanche violated Article 1, Section 11 of the Indiana Constitution.  *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that a contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress), *reh'g denied.*

[12]   Waiver notwithstanding, we may review an unpreserved claim on appeal if fundamental error occurs.  *Id.*  The State argues, and we agree, that Hayes does not make an independent claim that the trial court's admission of the methamphetamine evidence was fundamental error; therefore any fundamental error claim is also waived.  *See Cobbs v. State*, 987 N.E.2d 186, 191 n. 1 (Ind. Ct. App. 2013) (noting that where a defendant fails to raise a claim in his brief,

---

[1]  Hayes also invokes the Fourth Amendment of the United States Constitution; however, Hayes fails to provide us with an analysis of his federal constitutional claim separate from his Article 1, Section 11 analysis, as such, we confine our analysis to his Article I, Section 11 claim only.  *See Francis v. State*, 764 N.E.2d 641, 646-67 (Ind. Ct. App. 2002) (Indiana courts interpret and apply Article 1, section 11 independently from federal Fourth Amendment jurisprudence, and failure by a defendant to provide separate analysis waives any claim of error.).

such claim is waived for review).  Waiver aside, we will address his claim on the merits.

[13]     Hayes contends that the traffic stop violated the protections afforded by Article I, Section 11 of the Indiana Constitution.  "When police conduct is challenged as violating this section, the burden is on the State to show that the search [or seizure] was reasonable under the totality of the circumstances."  *State v. Washington*, 898 N.E.2d 1200, 1205 (Ind. 2008).  Relevant considerations in determining the reasonableness of a search or seizure "turns on a balancing of: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Johnson v. State*, 992 N.E.2d 955, 959 (Ind. Ct. App. 2013), *trans. denied*. (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[14]     As to the first *Litchfield* factor, the degree of concern, suspicion, or knowledge that a violation had occurred was high.  Hayes maintains that the traffic stop was illegal because Trooper Hottell had a mistaken belief that he had committed a traffic violation when he failed to use his turn signal when entering the BJ Stars' parking lot.  Indiana Code section 9-21-8-25 requires that the signal of intention to turn right or left be given continuously during not less than 200 feet.  Hayes argues that it was physically impossible for him to commit a traffic infraction because the turn into BJ Stars' parking lot was 188 feet from the intersection of Cassopolis and Baldwin.  This argument is unavailing.  At trial, Trooper Hottell testified she stopped Hayes for failing to use his turn

signal before turning into the BJ Stars' parking lot. Trooper Hottell further testified that after Hayes repeatedly demanded to know why she had stopped him, she explained the traffic infraction to Hayes, and Hayes admitted the mistake. Further, Indiana Code section 9-21-8-25 requires that a person may not slow down or stop a vehicle "unless the movement can be made with reasonable safety." Trooper Hottell also testified that Hayes turned so quickly that she had to slam on her brakes to avoid a collision. Not only did Hayes fail to signal his turn as required by Indiana Code section 9-21-8-25, he also turned so suddenly and unsafely in front of Trooper Hottell that she had to brake suddenly to avoid hitting him. As such, Trooper Hottell's traffic stop of Hayes was appropriate because she observed Hayes committing two traffic infractions.

[15] In addition, we find that the degree of suspicion was high after the traffic stop was initiated. While Trooper Hottell was securing Hayes for the traffic stop, Officer Ray and his narcotics-trained K-9 walked around Hayes' vehicle. The K-9 gave a positive alert on the vehicle in which Hayes was driving. Thus there was a high degree of suspicion that Hayes actually or constructively possessed illegal drugs inside his vehicle.

[16] As for the second *Litchfield* factor, the degree of intrusion, if any, was modest: Trooper Hottell turned her emergency lights on and pulled Hayes over. Hayes, however, escalated the situation quickly by exiting the vehicle and confronting Trooper Hottell. In order to protect herself, Trooper Hottell displayed her Taser, and another officer was required to display his firearm before Hayes complied with any orders. As Trooper Hottell secured Hayes, Officer Ray and

his K-9 walked around Hayes' vehicle and conducted a dog sniff. Inasmuch as the dog sniff may be considered to intrude in a person's ordinary activities, the level of intrusion was minimal since Hayes was already detained by Trooper Hottell.

[17] Finally, as to the extent of law enforcement needs, we find that the K-9's positive alert for narcotics turned the traffic stop into a narcotics investigation and gave rise to a reasonable belief that Hayes had illegal drugs inside his vehicle. Similarly, we find that this factor also weighs in favor of the State.

[18] For all of these reasons, we conclude that the warrantless search of Hayes' vehicle was not unreasonable under the totality of these circumstances and did not violate Article 1, Section 11 of the Indiana Constitution. Accordingly, we conclude that the trial court did not abuse its discretion when it admitted the challenged evidence.

## II. *Sufficiency of the Evidence*

[19] Hayes claims that there was insufficient evidence to convict him of the Level 2 felony dealing in methamphetamine. When reviewing a claim of insufficient evidence, it is well established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact

could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[20] To convict Hayes of Level 2 felony dealing in methamphetamine, the State was required to prove beyond a reasonable doubt that Hayes did knowingly possess, with intent to deliver, methamphetamine, pure or adulterated, and the amount of the drug involved weighed at least ten (10) grams. *See* I.C. § 35-48-4-1.1(a)(2)(C), (e)(1).

[21] As stated, 27.84 grams of methamphetamine, and an additional six individually wrapped baggies containing 1 gram of methamphetamine, were recovered in Hayes' vehicle. Hayes' sole contention is that the State failed to prove beyond a reasonable doubt that he possessed the methamphetamine with the intent to deliver. In making this argument, Hayes asserts that the "State's only evidence to support the inference that [he] intended to deliver the methamphetamine was the quantity being greater than a typical user amount." (Appellant's Br. p. 11)

[22] Because intent is a mental state, the trier of fact must generally resort to the reasonable inferences arising from the surrounding circumstances in order to determine whether the requisite intent exists. *Love v. State*, 741 N.E.2d 789, 792 (Ind. Ct. App. 2001), *trans. denied*. "Circumstantial evidence showing possession with intent to deliver may support a conviction. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally." *Id*.

[23] Sergeant Andrew Whitmyer (Sergeant Whitmyer), of the Elkhart City Police Department, testified that based on his training and experience with drug dealing and the typical practices of users, 27.58 grams of methamphetamine did not suggest a user amount. He further averred that "[a]n ounce of meth is quite a bit of meth. It's more consistent with a dealer." (Tr. Vol. III, p. 14). He further noted that the 27.58 grams of methamphetamine that Hayes possessed would typically be repackaged and distributed for sale.

[24] Regarding the six baggies of methamphetamine, Sergeant Whitmyer additionally testified that "one of the things that we see a lot in drug distribution is the small Ziploc baggies, which is [] individually packaged for [] distribution." (Tr. Vol. III, p. 15). *See Hape v. State*, 903 N.E.2d 977, 998 (Ind. Ct. App. 2009) (holding that the amount of methamphetamine, the packaging of the drugs in multiple bags, coupled with an officer's testimony, was sufficient to prove Hape's intent to deliver the methamphetamine.), *trans. denied*.

[25] Based on the 27.58 grams of methamphetamine, the six baggies each containing one-gram of methamphetamine, and Sergeant Whitmyer's testimony, the jury could reasonably infer that the methamphetamine was not solely for personal use but instead was intended to be sold to other users. In sum, we conclude that the State proved beyond a reasonable doubt that Hayes intended to deal the methamphetamine he possessed.

III. *Inappropriate Sentence*

[26] Hayes finally contends that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of the offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id*.

The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Indiana Code section 35-50-2-4.5 provides that "A person who commits a Level 2 felony shall be imprisoned for a fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and

one-half (17½) years." The trial court sentenced Hayes to the maximum sentence of thirty years.

[27] Turning to the nature of his offense, Hayes asserts that he "possessed a relatively small quantity" of methamphetamine, which does not warrant a maximum sentence. (Appellant's Br. p. 12). Contrary to his assertion, we note that for the Level 2 felony dealing in methamphetamine, Hayes was required to possess at least 10 grams of methamphetamine to be convicted of that offense. *See* I.C. § 35-48-4-1.1(a)(2)(C),(e)(1). The facts show that Hayes possessed nearly three times the amount of methamphetamine required for his offense— *i.e.*, 27.58 grams methamphetamine, and six baggies each containing one-gram of methamphetamine.

[28] Concerning the character of the offender, according to the pre-sentencing investigation report, Hayes, born in 1974, was first convicted of two Counts of aggravated robbery when he was seventeen years old in Wilmington, Ohio. Hayes then served approximately 18 months through the Ohio Department of Youth Services. As an adult, Hayes' criminal history of misdemeanor and felony convictions from Florida and Ohio consist of the following: Obstruction by disguised person, driving while suspended (7), possession of marijuana (3), retail theft, obstructing justice without violence (2), disorderly conduct, possession of an open container of alcohol, check deception, obstructing or resisting officer without violence (2), theft, possession of methamphetamine, and battery on a law enforcement officer without violence. At the time Hayes committed the instant offense, he had a pending charge in Elkhart County for a

Class A misdemeanor battery causing bodily injury. In addition, we note that on multiple occasions, Hayes had been placed on probation in Indiana and Florida, which he violated various times. After due consideration of the trial court's decision and in light of Hayes' criminal history, we cannot say that the thirty-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and Hayes' character.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting the evidence of the methamphetamine recovered through the search of Hayes' vehicle. Also, we conclude that there was sufficient evidence beyond a reasonable doubt to sustain Hayes' conviction, and his sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed

Kirsch, J. and Robb, J. concur